# Conn et al. *v.* Pennsylvania Railroad, Appellant.

*Negligence—Railroads—Expecting clear track—Presumption—Trespassing—Duty to signal—Minors.*

1. In a place where a railroad company has a right to expect a clear track, where it is not anticipated persons will be, and where they have no right to be, the company may presume that no person will be on the tracks, and may act on that presumption.

2. In such case, the blowing of a whistle of a locomotive, or making any other signal, is not a duty owed to the persons in the neighborhood trespassing on the tracks, and consequently the fact that no whistle is blown, nor signal made, is not evidence of negligence.

3. The fact that a person injured in such a place by a train, is of immature years, imposes no higher duty on the railroad company, than if he had been an adult, until the child's danger is discovered.

*Negligence—Railroads — Permissive crossings defined — Use by boys—Railroad adjacent to public park used as playground— "Playground" cases—Evidence—Trespassers.*

4. A permissive way is a license to pass over the property of another; it may be either express or implied, but in the case of an implied public reservation, it must be frequently, notoriously and continuously used by the public to raise the inference of acquiescence on the part of the landowner in such use.

5. One cannot maintain a prescriptive right by showing that he was in the habit of crossing another's land, but not upon any definite way or any particular route or line.

6. The adverse enjoyment of the way must be in the same place within definite lines for the whole period of limitation, and not spread out over open ground in many divergent tracks.

7. It will not be assumed that a railroad company would permit a crossing over its railroad where the public had at its pleasure traveled over many different places on a wide area of the company's land.

8. Some sort of physical designations are necessary to point out the course of a permissive crossing over a railroad.

9. A permissive crossing over the tracks of a railroad company's right of way beneath an overhead bridge, within the limits of a public park, cannot be established by evidence that boys, using the city park as a playground, had, for several years, by varying and ill defined approaches, crossed the tracks longitudinally under the bridge either for the purpose of shelter from rain, or to procure and carry drinking water, or to avoid policemen or gangs of older boys who drove them from their play.

10. The mere use by boys for such purposes, without proof that other members of the public ever crossed the tracks under the bridge, is not sufficient to show that the railroad company permitted the crossing of its tracks at the place indicated.

11. The fact that a particular path was a little more worn and marked by travel than the general surface, cannot be regarded independently of other proof as an indication of a claim of right.

12. Where land used by boys as a playground was part of a city park, and there was no access to it over the railroad property, except along the tracks of the railroad under an overhead bridge, and the boys used this approach, not as an access to the park, but frequently as an exit from the park, and as a way to procure drinking water for the players, it cannot be asserted that the railroad company permitted its right-of-way under the bridge to be used as a means of access to a playground, and the rules laid down in "playground" cases have no application.

496    CONN et al. *v.* PENNA. R. R., Appellant.

Argued January 10, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 257 and 258, Jan. T., 1926, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1924, No. 4412, on verdict for plaintiffs, in case of Herbert Conn, by his mother and next friend, Jennie Conn, and Jennie Conn, in her own right, v. Pennsylvania Railroad Company. Reversed.

Trespass for loss of both legs by boy twelve years old. Before AUDENRIED, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff, Herbert Conn, for $35,000, and verdict for Jennie Conn for $5,000 on which judgment was entered for $2,500. Defendant appealed.

*Error assigned* was, inter alia, refusal of judgments for defendant n. o. v., quoting record.

*John Hampton Barnes,* of *Barnes, Biddle & Morris,* for appellant.—The crossing must be a specific path: Kay v. R. R., 65 Pa. 269; Phila. & Reading R. R. v. Troutman, 11 W. N. C. 453; Forno v. R. R., 234 Pa. 538; Steele v. Ry., 238 Pa. 295; Kovarik v. R. R., 240 Pa. 533; Piepke v. Ry., 242 Pa. 321; Lodge v. R. R., 243 Pa. 10; Muscarella v. R. R., 265 Pa. 120.

The boys walked along the cinder fill and sleepers between the rails, using, therefore, the right-of-way itself occupied by the tracks as a roadway; and it is our contention that, although the public has a right to step on a right-of-way at a crossing, they cannot walk along a right-of-way on the tracks, and thus turn it into a permissive right of way: Caudell v. R. R., 234 Pa. 392; Kay v. R. R., 65 Pa. 269.

Nonsuits or binding instructions have been entered in cases like the present one where children or adults had

no right to use the tracks: P. & R. R. R. v. Hummell, 44 Pa. 375; Hoffman v. R. R., 248 Pa. 62; Bailey v. R. R., 220 Pa. 516.

If recovery is sustained here it will mean that railroads cannot be safe unless they put fences which infants cannot climb or penetrate along their entire right-of-way, and signal continuously: Kaseman v. Boro., 197 Pa. 162; Moore v. R. R., 99 Pa. 301; Hojecki v. R. R., 283 Pa. 444; Leithold v. R. R., 47 Pa. Superior Ct. 137.

The playground cases are distinguishable: Counizzarri v. R. R., 248 Pa. 474; Kremposky v. Coal Co., 266 Pa. 568; Francis v. R. R., 247 Pa. 425; O'Leary v. R. R., 248 Pa. 4; Slamovitz v. R. R., 266 Pa. 63; Smith v. Ry., 274 Pa. 97.

*W. Horace Hepburn, Jr.,* with him *E. Everett Mather, Jr.,* for appellee.—Defendant was liable: Francis v. R. R., 247 Pa. 425; Slamovitz v. R. R., 266 Pa. 63; Kremposky v. Coal Co., 266 Pa. 568; Taylor v. Canal Co., 113 Pa. 162; Smith v. Ry., 274 Pa. 97; O'Leary v. R. R., 248 Pa. 4; Hastings v. R. R., 272 Pa. 212; Toner v. R. R., 263 Pa. 438; Costanza v. Coal Co., 276 Pa. 90; Gawronski v. McAdoo, 266 Pa. 449; Ginocchi v. R. R., 283 Pa. 378.

The first five cases cited above are all cases of ways along railroads, lateral to the railroad.

The contention of appellee is that where railway companies run through public parks where the public is liable to be, they should be responsible if on unfenced ways they fail to ring or whistle and run their trains backwards with no man on the rear end, contrary to their own rules.

OPINION BY MR. JUSTICE FRAZER, March 14, 1927:

This action is by a mother and her minor son against the Pennsylvania Railroad Company to recover damages for personal injuries suffered by the latter being struck by a train of cars while the son stood on defendant's

right-of-way beneath the Girard Avenue Bridge within the limits of Fairmount Park, in the City of Philadelphia. Counsel for the defendant, after the plaintiffs had closed their case, moved for a nonsuit, which was refused. The jury awarded verdicts for plaintiffs and judgments were entered thereon.

For the consideration of this appeal we have at the start the one question determinative of the case placed before us in the words of the learned trial judge in his charge to the jury. This primal question is, Was there a permissive right of way or crossing over the land and tracks of the defendant company by which the minor reached the spot under the bridge where he received injury? Plaintiffs contend a crossing of the character indicated existed there and that "it extended along and across the said tracks of the defendant, near or through the said bridge, to the knowledge of the defendant." Defendant claims there was no permissive or other crossing at the place designated, and the issue is directly before us in the words of the learned court below, in the charge to the jury, as follows: "If there was nothing else in the case except the fact he was struck at the particular point which the evidence indicates as the scene of the accident, I would have to tell you that he has no claim to recover damages against the defendant. There is evidence, however, on the part of the plaintiffs, upon which counsel relies to persuade you that here the boy was on what we call a permissive way, a permissive crossing of the tracks of the railroad." Further on in his charge the learned judge said: "In other words, you are to say whether it was just something that happened occasionally, and whether the boys were trespassing there, or whether it had happened so frequently that it might be inferred, from the railroad's failure to take measures to keep the boys and other people from using the tunnel as a passageway, that it consented to its use."

As this case rests upon its own peculiar facts, and the main, indeed the only, question to be settled is as to the existence or nonexistence of the permissive way or crossing, we may recite in a few sentences the facts and circumstances of the accident itself, of the existence of which there is no dispute. On a bright Sunday in June, shortly after noon, the plaintiff, then 12 years of age, had gone with other lads upon a large, vacant triangular lot in Fairmount Park which belonged to the City of Philadelphia, and over which defendant had no control whatever. For many years this open field had been a favorite place for sports by boys and young men, large crowds of spectators at times during the summer months, gathered there to witness the games. The lot was triangular in shape and bounded on two sides by tracks of defendant. At the northern end it bordered on Girard Avenue, a thoroughfare, as testified, 100 feet in width. Between the lot and the avenue was a fence and through an opening in which persons gained access to and departed from the park field. The west side of this lot joined the line of the right-of-way of defendant's railroad, with a fence marking the line between the lot and the railroad property, which was three feet in height and its panels composed of posts and three longitudinal iron rods or tubes. From the fence line, beginning at the abutment of the Girard Avenue bridge, the land of defendant company slopes down a distance of about 18 feet to the level of the railroad bed, on which lay four tracks running north and south and passing under the bridge named. The side of the railroad property directly opposite the sloping land was completely blocked by the high solid rear walls of a large brewery, building, thus effectually preventing passing from the roadbed on that side, so that persons once on the tracks of defendant's road at this point had but two ways of departure, by going southward on the tracks into Fairmount Park, or by going northwardly under the Girard

Avenue bridge, the distance between these two points being about 550 feet.

While arranging for a game on the field mentioned, plaintiff and his comrades were driven from the lot by a "gang" of older boys, a disturbance, as the evidence shows, of not infrequent occurrence. In his flight, plaintiff, followed by other boys, fled over or under the fence marking the line between the playfield and the railroad property, ran down the slope at the south side of the Girard Avenue bridge, upon and along the railroad tracks, following them longitudinally as they extended beneath the bridge. Apparently, as he ran beneath that structure, plaintiff went upon the narrow space of land between the west wall of the bridge and the near track. As he was approaching the north side of the bridge where he intended to emerge, he was struck and injured by a train of freight cars, running backward, which suddenly rounded a sharp curve near the north side of the bridge. It was charged by plaintiff and so testified to by witnesses that no warning of the approaching train was given either by bell or whistle, that no person was on guard at the end of the train, and that no warning signs were displayed along the tracks. There was no denial on the part of the defendant company of that evidence. The engineer testified he had not seen plaintiff on the track, and did not know of his injury until sometime afterward. The train was running at a speed of from 18 to 20 miles an hour.

Considering then the accident and the circumstances attending it, we find from the evidence that the injured lad had entered upon the property of defendant after leaving the playground, which was a part of Fairmount Park and owned by the City of Philadelphia, had gone down the slope on defendant's right of way, crossed, perhaps diagonally, the tracks and ran under the Girard Avenue bridge upon defendant's tracks, intending to pass out on the north side. As the evidence shows, the entire locality connected with this accident, except the

ball ground, was defendant's property, in a place where defendant had a right to expect a clear track, where it was not anticipated persons would be, and where they had no right to be. To such a situation language of this court in P. & R. Railroad v. Hummell, 44 Pa. 375, is directly applicable: "The defendant had no reason to suppose that either man, woman or child might be upon the railroad where the accident happened. They had a right to presume that no one would be on it, and to act upon the presumption. Blowing the whistle of the locomotive or making any other signal, was not a duty owed to the persons in the neighborhood, and consequently the fact that the whistle was not blown, nor a signal made, was no evidence of negligence."

Holding, as we are constrained to do, that the injured boy did not enter upon and did not pass over defendant company's right of way, which included the sloping ground and all the trackage, by a consentable way, he was consequently a trespasser on defendant's tracks, and was injured while there wrongfully, at a place where the defendant had no reason to anticipate that either he or anyone else, aside from defendant's employees, would be, at any time of day or night. So far we are on common ground with the learned trial judge, with respect to the manner in which the boy went upon defendant's property and the circumstances of the accident. That he was a trespasser the facts as disclosed by the testimony show indisputably. However, we may not stop here, for it is contended on the part of plaintiff that he was not a trespasser, that he was not wrongfully upon defendant's tracks at the time of the accident, for the reason that a permissive right of way or crossing existed over defendant's land at the places where the boy travelled and at the point where he was struck by the train.

We have purposely particularized to a somewhat minute extent the topography of the locality which embraced the scenes of the events detailed in the evidence

in the case, so that the location and extent of this alleged permissive crossing may be clearly visualized.

A permissive way is a license to pass over the property of another; it may be either express or implied, but must, however, be restricted to a well defined location, and especially in the case of an implied public permission, must be frequently, notoriously and continuously used by the public, to raise the inference of acquiescence on the part of the landowner in such use. Does the relevant evidence establish a way or crossing of the character above indicated?

One cannot maintain a prescriptive right by showing that he was in the habit of crossing another's land, but not upon any definite way or any particular route or line. The adverse enjoyment of the way must be in the same place within definite lines for the whole period of limitation, and not spread out over open ground in many divergent tracks: Jones on Easements, section 294.

The mere fact that a number of persons are in the habit of using a certain place as a crossing where there is no public right of passage does not constitute such place a public crossing, or generally confer upon such persons a character or right other than that of trespassers: 33 Cyc. 921.

A permissive crossing over railway property is not evolved from mere considerations of convenience nor from whimsical insistences of impatient people, nor from the erratic wanderings of adventurous children; and it is difficult to believe that a railroad company will, under present day circumstances, allow with indifference a permissive right of way to exist at a dangerous locality, for the need of which not a single mortal, outside of its own employees, can present a sensible reason, where the necessities of no one can be served by such permissive way, and, finally, where, as is shown by the evidence, the public, not even to the extent of a single individual, has been a user for any period of years, constantly, openly and without dispute.

Matters quite extraneous to the occurrence of the accident itself were produced by plaintiff in his efforts to establish his claim of a permissive crossing. Much is brought out in the evidence of the use of this crossing by plaintiff and other young boys at various times during summer months for a varying number of years back. The evidence shows that boys passed up and down the slope on defendant's land over the tracks and under the Girard Avenue bridge periodically, impelled by boys' inclinations or purposes; but a close scrutiny of the evidence discloses, with unquestionable certainty, that, so far as the public was using or ever had used this alleged public crossing, that "public" consisted entirely of boys, who went on defendant's right of way, when they did go there, in groups or individually. We find one of plaintiff's witnesses, a boy, testifying that he had seen "other people" than himself going beneath the bridge, and if any fair inference can be at all drawn from his testimony, it is that his "other people" meant boys like himself who ventured there. If there was any witness in the case capable of furnishing proof that the public were using, or ever had used, this way over the tracks and underneath the Girard Avenue bridge, it was park guard Petry, who was called by plaintiff. He said he had been employed in that neighborhood as a park guard during eight years and had "frequently" seen boys upon the railroad property, but there is not one word in his evidence from which it can be fairly inferred that he ever saw other persons there. The evidence shows none but boys at different times were the users, we are provided with abundant proof as to why they ventured upon that dangerous way. A brief examination of this proof will exhibit how entirely inconsistent to any justification of a claim of a public crossing or way were the uses to which these boys intermittently put the railroad property. With unvarying unanimity and precision witnesses for plaintiff, all of whom, at one time or another, had been either players or spectators on the city

park lot, set forth the causes and manner of their expeditions upon the railroad tracks and their testimony discloses that the purposes they had in view were the following and no others : When delegated, to the number of one or two, to fetch drinking water from a spring on the north side of the bridge, in Fairmount Park, and not on defendant's property; to find shelter under the bridge when it rained; to escape when attacked by older "gangs" on the city lot while games were being played; and to escape policemen and park guards when they chased boys from the park property and the slope or tracks, on which occasions they sought escape by running beneath the bridge. Nowhere in the record is there proof to show these boys ever entered upon defendant's property for any purpose other than those we have given above.

In whatever place a public right of way over railroad property, whether permissive of by some stronger claim of right, may be located, certainly some sort of physical designations are necessary to point out its course. If it be a crossing created by implied permission as claimed in this case, necessarily during the time required to perfect such permission into a license, there will be evident signs of public usage. What physical signs of public user do we find in this case? Several witnesses for plaintiff speak of "beaten paths," but we find, in examining the testimony, including the photographs in the record, that by such paths are meant the filled in spaces between the tracks on defendant's railroad bed, and there is not a word of evidence to show that these were used at any time by persons outside the employees of defendant company, except those comparatively few venturesome boys who might run on them in their speedy flights beneath the Girard Avenue bridge. The evidence in the case indicates that only the ordinary surfaced roadbed with its tracks extended beneath the bridge. We find the existence of nothing on the roadbed to indicate that defendant was, even impliedly,

permitting or licensing the public to use it, and there is no evidence that the public, individually or collectively, at any time did use it or was using it at the time of the accident.

We discover, by the evidence, that there was "one well defined path" running down the slope of the railroad property from the line of the park playground, close to the Girard Avenue bridge. But when we come to look into the matter of "paths" we find a state of affairs entirely inconsistent with the claim of a public crossing.

Although the learned trial judge in his charge to the jury paid but scant attention to "paths," we give them larger consideration here because we attach to them an importance and significance that render them a determinative factor in this case. They are, in fact, the single factors in the record that give any tangibility, thin and inadequate, to be sure, to the plaintiff's claim of the existence of a permissive crossing. There was not only one "path," however, as the evidence discloses; there were a number, none of which in fact were paths, but merely abraded places on the grass and soil along the slope, at varying distances apart, as the slope extended southward into Fairmount Park. It is thus apparent that when the boys ran down the slope they passed over it as they pleased. They chose, instead of one particular place for descent upon the tracks, as many ways and at such parts of the slope as their convenience, their caprice or their terrors suggested. The witnesses speak of one "particular path" close to the abutment of the Girard Avenue bridge; but the testimony shows this was more often used by the lads because near to the bridge; when driven from the playground by larger boys or park guards or policemen, or when on expeditions for drinking water, they could, by slipping down the slope at this point, reach the spring or park more easily and quickly than at any other place. There was nothing, to visibly attest the existence of a crossing at this

point but the numerous thinly marked small gullies, apparently made by rain and abrasions which at various and intermittent times the boys followed in leaving the playground and passing hurriedly to the bridge. The user must not be clandestine or by stealth, but open, notorious, visible and undisputed: Ward v. Warren, 82 N. Y. 265.

It was in this hasty manner, as the testimony discloses, that plaintiff, with about fifteen of his companions, rushed down the slope after being driven from the ball field by the aggressive older boys. They spread along the slope in their anxiety to escape their tormentors. Being shown a photograph of the embankment, plaintiff was asked: "Q. And that was the bank you ran down? A. Yes, sir. Q. Somewhere along there? A. Yes. Q. You cannot say exactly where? A. No." Another of the witnesses, one of the boys who ran down the slope with the plaintiff on the day of the accident, was asked: "Q. Were they running down all together? A. We were not all together; some were separated." Another witness, brother of plaintiff, said the boys ran up and down the slope "anywhere along there." Another witness, when asked, "Are there many paths around there?" testified: "Oh, there is plenty of paths around there. There wasn't any particular paths, but the whole side we all used to come down. It was all mown down, the grass was all sort of worn in paths." A crossing over a railroad must have some limitations; the way across must be confined to a limit of user. It would be preposterous to suppose that a railroad company would permit a crossing over its property, where the public at its pleasure travelled over many different places on a wide area of the company's land. The way must be in the same place within definite limitations and not spread out over open ground in many divergent tracks (Jones on Easements, section 294) and the fact that a particular track or path was a little more worn and marked by travel than the general surface of the lot, or that the property

had been occasionally gullied by the rain, could scarcely be regarded, independently of other proof, as an indication of a claim of right: Jones on Easements, section 275.

We cannot agree with the learned trial judge, as stated in his opinion refusing a motion for a new trial, that "no distinction can be drawn between the case where a railroad company permits its yards to be used as a playground and the case where it permits its tunnel to be made use of as a means of access or exit from a playground." The application of this principle might be conceded in exceptional cases, but we cannot admit of its application to the present action. There is no analogy in the suit before us to any of the playground cases. The ground upon which the games were played belonged to the City of Philadelphia; no games were played upon defendant's property; not a single person, so far as the evidence shows, at any time entered the Fairmount Park playground over the land of defendant, with the exception of the few boys, as the proofs in the case show, who went up and down the slope from their wrongful expeditions to the spring of water on the north side of the bridge, and to reach which there was a safe and lawful way from out the field upon Girard Avenue.

The one proper entrance to the field was that upon the avenue. There was no opening in the fence on the dividing line between the lot and the railroad property, nor was there any sign of permission or invitation on defendant's land or any other place to indicate defendant was acquiescing or would acquiesce in the entrance of persons into the play lot over its right of way. We cannot be expected to hold that the stealthy, sporadic and intermittent rushes through the "tunnel," or rather space beneath the bridge, by boys while fleeing from their tormentors on the playground, or their passage underneath the bridge on their return journey with water from the spring, may constitute actions proving that defendant was "permitting" this narrow and dangerous way under

the bridge to be used as a public crossing. The park guard testified that he had "frequently" seen boys go under the bridge, on the railroad tracks, but he could not follow and catch them, just as all the combined police personnel of defendant railroad company cannot foresee or prevent the innumerable and dangerous trespasses upon and over its tracks daily in a thousand different places along its lines. The testimony does not show that there was ever any regularity or continuity in the trips of the boys under the bridge. As the evidence indubitably proves, they never passed over the tracks towards the playground, except when occasionally carrying water there; and it was only when some boyish need was heeded that they journeyed down from the field over the slope, onto the tracks, and beneath the bridge. If the day was "hot," they made casual trips for water; if it rained, and they felt so inclined, they sought cover under the bridge; if they were driven from the play lot by older boys, they fled to the park by way of the bridge, if they thought that was the best thing to do. It is evident they were at no time conspicuous as to numbers or as to their presence beneath the bridge or on the tracks. The engineer of the train by which plaintiff was injured, when called by the latter, testified "it was not customary to see boys running across the tracks there, not to me anyhow"; and he had been on that track "very often." Upon what grounds then is it conceivably possible to allow the claim that defendant company permitted to be established and continued, by implied knowledge and consent, a public crossing over its tracks at the side of and extending under a bridge, a locality so isolated, difficult to reach, unnecessary and totally devoid of advantages which could render it in any way needful for the public to frequent, and a place so appallingly threatening and menacing to both adults and children?

In support of the conclusion we have reached, and ad-

ditional to what we have said above, we need only refer to a few decisions in this and other states, touching the questions here involved. In Felton v. Aubrey, 74 Fed. 350, a leading case in which questions similar to those now before us were passed upon, it is said, among other things: "But upon its general tracks, where the public have no equal easement or right of way, a railroad company may operate its trains without regard to the possibility that unauthorized persons may be trespassers thereon. It need not anticipate the presence of such intruders, either upon its general track or in its strictly private yards...... To establish an implied license, [to cross railroad property] it is essential that the use shall have been definite, long, open and continuous. The mere fact that a railway track is frequently used as a walkway, or frequently crossed, and that no active steps were taken to stop them, would not justify the presumption of a license." See also Railroad Co. v. Cook, 31 U. S. App. 277; Newport News and M. Val. Co. v. Howe, 6 U. S. App. 172, 185; Cleveland, C., C. & St. L. Ry. Co. v. Tartt, 64 Fed. Repr. 823; Goodman's Admr. v. Louisville & Nashville R. R., 116 Ky. 900.

That plaintiff was of immature years imposed no higher duty on defendant, until his danger was discovered, than if he had been an adult: Felton v. Aubrey, supra; Moore v. Penna. R. R., 99 Pa. 301, 305; Railroad v. Hummell, 44 Pa. 375; Cauley v. P., C. & St. L. Ry., 95 Pa. 398; Goodman's Admr. v. Louisville & Nashville R. R., supra; Wright v. Railroad Co., 142 Mass. 296.

A most liberal view of the evidence in favor of plaintiff fails to establish a permissive way over defendant's property by long continuous and habitual use by the general public, at the place of the unfortunate accident in this case.

We have given this appeal most careful and thoughtful consideration, and while we sympathize with the injured boy, we see no escape, under the facts established

by the evidence and the law applicable thereto, from the conclusion that plaintiff was a trespasser, and that the evidence falls far short of showing the existence of a defined permissive way or crossing over defendant's property at the place of the accident, so no recovery can be had, and consequently defendant's request for binding instructions should have been affirmed.

Judgment reversed and entered for defendant.