## Delaware, Lackawanna & Western Railroad Company, Appellant, *v.* Shuman.

Submitted May 3, 1955. Before STERN, C. J. STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*G. W. Morgan* and *R. S. Hemingway,* for appellant.

*E. Eugene Eves* and *Smith & Eves,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, June 27, 1955:
This case arises out of a complaint in equity filed by The Delaware, Lackawanna & Western Railroad

Company to enjoin the use of a crossing over its right-of-way.

In 1862, the Lackawanna and Bloomsburg Railroad Company, which was subsequently merged into The Delaware, Lackawanna & Western Railroad Company, condemned land in Columbia County owned by appellees' predecessors in title for use as a right-of-way. The right-of-way which ran east and west divided the farm owned by appellees' predecessors in title and prevented free access from one portion to the other. The provisions of the Act of February 19, 1849, P. L. 79, 67 PS §381, require that a railroad under these circumstances construct ". . . a good and sufficient causeway or causeways, whenever the same may be necessary to enable the occupant or occupants of said lands to cross or pass over the same, with wagons, carts and implements of husbandry, as occasion may require, . . .". Such a causeway or crossing was constructed and maintained by appellant over the right-of-way through appellees' land.

In 1949 the Department of Highways relocated State Highway Route No. 4 through the land of appellees, paralleling appellant's right-of-way to the north thereof. The causeway or crossing over the right-of-way extended as a roadway from the highway to the south of appellant's right-of-way known as Route No. 11 to the new Highway No. 4 to the north. In the same year, 1949, appellees constructed on their premises to the north of the railroad right-of-way and between it and the reconstructed Highway No. 4, a gasoline service station and have since conducted the business of selling gasoline, oil and automobile parts and accessories to the public. The gasoline station was in proximity to the crossing over the railroad tracks and the latter was available to appellees' customers passing over it and using the roadway extending on either side of the

crossing for access to the gasoline station. The roadway was widened and improved by the appellees except at the actual crossing of the railroad tracks. The foregoing facts were established at the trial before the chancellor by admissions in the pleadings and the testimony of witnesses, and were not disputed by appellees. The appellant also adduced testimony to the effect that in an eight-hour period on August 4, 1952, there were 67 crossings of the right-of-way by motor vehicles, cyclists and pedestrians; for a six-hour period on August 7, 1952, there were a total of 51 crossing over the right-of-way; and for a six-hour period on August 9, 1952, there were 66 crossings.

The appellant claimed that there are other public highways in the immediate vicinity of the crossing in question available for use by appellees' service station customers and the public generally so that use of the private crossing was unnecessary and further that the private crossing was no longer being used for its original purpose; that because of the narrowing of the roadway at the point where it crosses the tracks, there is constant danger of serious accidents, causing loss of life and property and resulting litigation. The prayer of the complaint was that all use of the crossing be enjoined and the chancellor decree that the crossing be removed and abandoned. The appellees adduced evidence to the effect that they still used the crossing for farming purposes, that the improvement of the roadway leading to and from the crossing was necessitated by their use of modern, improved and larger farming equipment.

The chancellor made no formal findings of fact but concluded in his adjudication that the private crossing "has in fact become a public crossing". The chancellor held the court had no jurisdiction to pass upon the questions involved and dismissed the complaint with-

out prejudice, stating: "Since this is our conclusion [that the court had no jurisdiction] we do not deem it necessary to enter into a very lengthy discussion of the testimony presented, nor do we feel compelled to analyze the arguments of the respective counsel in support of their contentions. Likewise, we do not deem it necessary to comply with the Equity Rules of setting forth findings of fact, conclusions of law and discussion and a decree nisi, since we are convinced that the Public Utility Code has ousted the Court of Common Pleas of its jurisdiction. We believe any order made under these circumstances is a final order readily appealable. Likewise, we do not deem it necessary to enter into a discussion of the various cases relied upon by the respective parties . . .".

The basis of the decision by the court below that it had no jurisdiction was its construction of subsections (a), (b) and (c) of Section 409 of the Public Utility Code, Act of May 28, 1937, P. L. 1053, as amended, 66 PS §1179, which provide: "(a) No public utility, engaged in the transportation of passengers or property, shall, without prior order of the commission, construct its facilities across the facilities of any other such public utility or across any highway at grade or above or below grade, or at the same or different levels; and no highway, without like order, shall be so constructed across the facilities of any such public utility, and, without like order, no such crossing heretofore or hereafter constructed shall be altered, relocated or abolished. (b) The commission is hereby vested with exclusive power to appropriate property for any such crossing, and to determine and prescribe, by regulation or order, the points at which, and the manner in which, such crossing may be constructed, altered, relocated or abolished, and the manner and conditions in or under which such crossings shall be maintained,

operated, and protected to effectuate the prevention of accidents and the promotion of the safety of the public. (c) Upon its own motion or upon complaint, the commission shall have exclusive power after hearing, upon notice to all parties in interest, including the owners of adjacent property, to order any such crossing heretofore or hereafter constructed to be relocated or altered, or to be abolished upon such reasonable terms and conditions as shall be prescribed by the commission. In determining the plans and specifications for any such crossing, the commission may lay out, establish, and open such new highways as, in its opinion, may be necessary to connect such crossing with any existing highway, or make such crossing more available to public use; and may abandon or vacate such highways or portions of highways as, in the opinion of the commission, may be rendered unnecessary for public use by the construction, relocation, or abandonment of any such crossings. The commission may order the work of construction, relocation, alteration, protection, or abolition of any crossing aforesaid to be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth. . .".

A careful reading of the above section of the Public Utility Code discloses that in subsection (a) a public utility is prohibited from constructing its facilities across any *highway* and no *highway* may be constructed across the facilities of a public utility without a prior order of the Public Utility Commission. Subsection (a) then provides "without like order, no *such* crossing heretofore or hereafter constructed shall be altered, relocated or abolished.". (Emphasis supplied). The modifying adjective "such" clearly relates back to the highway crossings referred to in the first portion of subsection (a). Each time the word "crossing" is

used thereafter in subsections (b) and (c) it is preceded by the word "such". The Legislature undoubtedly has the power to give to the Public Utility Commission exclusive jurisdiction of all crossings over a railroad right-of-way, but in Section 409 of the Code the jurisdiction of the Commission was carefully limited to *public or highway* crossings.

The general provisions of subsections (b) and (c) are entirely consistent with this construction of subsection (a). Subsection (b) gives the Commission exclusive power to prescribe the manner in which such crossings shall be maintained and protected "to effectuate the prevention of accidents and the promotion of *the safety of the public.*". (Emphasis supplied). Subsection (c) authorizes the Commission under certain circumstances to open highways "to connect such crossing with an existing highway, *or make such crossing more available to public use;*" and may order the work of construction, relocation or abolition of any such crossing to be performed by any public utility or *"municipal corporation concerned or by the Commonwealth.".* (Emphasis supplied). These provisions of subsections (b) and (c) clearly refer only to a public or highway crossing over the facilities of a public utility, and give exclusive jurisdiction to the Public Utility Commission with respect to "such crossings".

This Court and the Superior Court in *Bartron v. Northampton County,* 342 Pa. 163, 19 A. 2d 263; *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission,* 136 Pa. Superior Ct. 1, 7 A. 2d 86, and *The City of Erie v. The Public Service Commission of Pennsylvania et al.,* 74 Pa. Superior Ct. 265, have commented on the exclusive nature of the jurisdiction of the Public Utility Commission over public crossings. Although the language used in these cases was not specifically restricted to public crossings, in each in-

stance the issue before the court concerned only highway or public crossings over the facilities of a public utility.

Since the chancellor made no formal findings of fact or conclusions of law in his adjudication, it is difficult to determine whether his conclusion that the jurisdiction of the Public Utility Commission is exclusive was based solely upon a construction of the section of the statute in question or also upon his statement that this crossing has become a public crossing, but in either event this case must be remanded to the court below for further consideration.

The exclusive jurisdiction of the Public Utility Commission under the Code is limited to *highway crossings* over facilities of a public utility. "Highway" is defined in Section 12 of the Code, 66 PS §1102, as follows: " 'Highway' means every way or place, of whatever nature, open to the use of the public *as a matter of right* for the purposes of vehicular traffic.". (Emphasis supplied). There is no evidence in this case that the crossing in question was open to the public as a matter of right. Neither of the parties in this appeal at any time contended or admitted that the crossing in question was a public or highway crossing. Appellees placed signs at either end of the roadway stating "Private Crossing—At Your Own Risk", and specifically denied that it had ever been represented to anyone that the crossing was open to the public. No application was ever made to the Public Utility Commission to locate a public crossing at this point. The only evidence introduced as to the use of this crossing was that some people did use it and that appellees never prevented such use except to the extent of placing the above signs at either end of the roadway. The mere fact that a number of persons are in the habit of using a certain place as a crossing where there is no public

right of passage does not constitute such place a public highway crossing: *Conn et al. v. Pennsylvania Railroad,* 288 Pa. 494, 502, 136 A. 779; *Pieckowicz v. Oliver Iron & Steel Company et al.,* 351 Pa. 209, 213, 40 A. 2d 416.

The order of the court below is reversed and the case is remanded for further proceedings in accordance with this opinion. Costs to abide the event.