627 A.2d 244

CITY OF BETHLEHEM and Harold S. Campbell, Petitioners,

v.

PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1992.

Decided June 15, 1993.

Richard A. Sprague, for petitioners.

Susan D. Colwell, Asst. Counsel, for respondent.

Before DOYLE and KELLEY, JJ., and LORD, Senior Judge.

KELLEY, Judge.

The City of Bethlehem (City) and Harold S. Campbell (Campbell) (referred to jointly as petitioners) appeal from a final decision of the Pennsylvania Public Utility Commission

(PUC) denying their application for approval of the reconstruction and alteration of railroad crossings within the City boundaries. We affirm.

On October 19, 1987, the City and Campbell, a real estate developer, filed an application with the PUC seeking approval for the alteration and upgrading of two existing at-grade crossings where Spring Lake Drive and Mountain View Drive cross a single set of railroad tracks and right-of-way owned by Consolidated Rail Corporation (Conrail). The application proposed to open two existing private road crossings for public use in order to accommodate the heavier motor vehicle traffic foreseeable by the proposed adjacent construction of Spring Lake Farms, a residential community developed by Campbell.

Spring Lake Drive is paved, requiring no further construction except for the installation of signalling devices, such as reflectorized crossbucks.[1] Mountain View Drive is a gravel road which requires upgrading and paving according to established City construction specifications. Both of the subject crossings are currently protected only by crossbucks. Both roads are private roads which have not been accepted for public dedication by the City. At present, and for the foreseeable future, Conrail operates six freight trains per week along the railroad line: two per day, three days a week.

As part of the development of the residential community, the City entered into an agreement with Campbell whereby it would assume ownership and maintenance of the new roadways and crossings (except for the area within two feet of the rails on either side) after the construction is completed according to city specifications. This agreement memorialized, in the form of a consent decree, the terms of a settlement of a related lawsuit between the City and Campbell. Petitioners then applied to the PUC for approval of the proposed alteration and upgrading of the crossings.

At a hearing held on October 10, 1990, Conrail argued that the matter should be dismissed because the PUC lacked

1. "Crossbucks" refer to the x-shaped signs posted on either side of railroad tracks which specify "Railroad Crossing" to approaching traffic.

jurisdiction since the roads involved are private roads, not public highways, and therefore not within the subject matter jurisdiction of the PUC. The Administrative Law Judge (ALJ) took the objection under advisement and proceeded to hear testimony that day and at subsequent hearings held on December 10, 1990, April 8, 1991, and September 23, 1991.

Expert testimony offered by the petitioners concluded that the crossbucks with advance signs to warn motorists of the tracks would be appropriate for the crossings. In contrast, Conrail argued that full electronic signalization, including gates, should be installed at every crossing.

On September 23, 1991, the ALJ determined that because the City has yet to accept the dedication of the crossings as public roads, he had no choice but to uphold Conrail's objection, and recommend the dismissal of the application for lack of jurisdiction. Following the filing of timely exceptions by the petitioners, the PUC entered an order on March 12, 1992 adopting the recommended decision of the ALJ. On April 9, 1992, petitioners appealed the PUC order to this court. Conrail filed a notice of intervention one month later.

On appeal, petitioners raise the following issues: (1) whether the PUC erred in concluding that it lacks jurisdiction over an application to alter two railroad crossings, which crossings the City is obligated to own pursuant to the enforceable consent decree upon completion of the crossings and other associated roadways, and; (2) whether the PUC lacks jurisdiction over private railroad crossings which affect the public's safety and welfare.

Initially, we note that our scope of review is limited to determining whether the PUC's findings of fact are supported by substantial evidence, an error of law has been committed, or constitutional rights have been violated. *Crown American Corporation v. Pennsylvania Public Utility Commission,* 76 Pa.Commonwealth Ct. 305, 463 A.2d 1257 (1983).

The PUC's authority in railroad crossing cases is set forth

in section 2702 of the Public Utility Code [2] (Code). Subsection (a) provides:

> No public utility, engaged in the transportation of passengers or property, shall, without prior order of the commission, construct its facilities across the facilities of any other such public utility or across any highway at grade or above or below grade, or at the same or different levels; and *no highway, without like order, shall be so constructed across the facilities of any such public utility, and, without like order, no such crossing heretofore or hereafter constructed shall be altered,* relocated, suspended or abolished. (Emphasis added.)

Subsection (c) further provides in relevant part:

> [T]he commission shall have exclusive power after hearing, upon notice to all parties in interest, including the owners of adjacent property, *to order any such crossing heretofore or hereafter constructed to be relocated or altered, or to be suspended or abolished* upon such reasonable terms and conditions as shall be prescribed by the commission.... The commission may order the work of construction, relocation, alteration, protection, suspension or abolition of any crossing aforesaid to be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth. (Emphasis added.)

Our Supreme Court thoroughly interpreted this jurisdictional language in *Delaware, Lackawanna & Western Railroad Company v. Shuman,* 382 Pa. 452, 115 A.2d 161 (1955). The court explained:

> A careful reading of the above section of the Public Utility Code discloses that in subsection (a) a public utility is prohibited from constructing its facilities across any *highway* and no *highway* may be constructed across the facilities of a public utility without a prior order of the Public Utility Commission. Subsection (a) then provides "without like order, no *such* crossing heretofore or hereafter constructed shall be altered, relocated or abolished." The

**2.** 66 Pa.C.S. § 2702.

modifying adjective "such" clearly relates back to the highway crossings referred to in the first portion of subsection (a). Each time the word "crossing" is used thereafter in subsections (b) and (c) it is preceded by the word "such". The Legislature undoubtedly has the power to give to the Public Utility Commission exclusive jurisdiction of all crossings over a railroad right-of-way, but in Section 409 [3] of the Code the jurisdiction of the Commission was carefully limited to *public or highway* crossings.

*Id.*, 382 Pa. at 456–57, 115 A.2d at 164 (emphasis in original). The court continued:

These provisions of subsection (b) and (c) *clearly refer only to a public or highway crossing* over the facilities of a public utility, and give exclusive jurisdiction to the Public Utility Commission with respect to "such crossings". *Id.*, 382 Pa. at 457, 115 A.2d at 164 (emphasis added).

Thus, the statutory language requires that the roadway involved in a railroad crossing be a public highway for the PUC to exercise jurisdiction. The Code provides a definition of "highway" in section 102: [4] "A way or place of whatever nature open to the use of the public as a matter of right for the purposes of vehicular traffic."

Petitioners argue that the statutory language contained in section 2702 clearly authorizes the PUC to exercise its jurisdiction in connection with the construction of the subject railroad crossings. In addition, petitioners argue, there is no statutory requirement that a formal acceptance of dedication of the proposed crossings to a municipality must occur before the crossings may be deemed "public", triggering the PUC's jurisdiction.

Petitioners maintain that the PUC erred in holding that it lacks jurisdiction over the application because the City is

3. In this case, the Supreme Court interpreted the predecessor to section 2702 of the Code which contained precisely the same language as is involved here. Section 409 of the Code (Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. § 1179) was repealed, but reenacted verbatim as 66 Pa.C.S. § 2702.

4. 66 Pa.C.S. § 102.

obligated to own the crossings pursuant to a binding and enforceable consent decree, upon completion of the crossings. Once the crossings are completed, the City is obligated to accept ownership of them. In light of this consent decree, petitioners argue, the crossings must be considered public "highways" which are within the jurisdiction of the PUC under section 2702(a), thus allowing the PUC to address the merits of the application. We disagree.

Here, there is no public highway involved. There is no evidence in the record that the roads in question have ever been used by the public on an uninterrupted basis for any period of time. Further, because the City has yet to accept dedication of the reconstructed crossings, the crossings remain private. If all specifications are adhered to, after completion of the reconstruction and alteration, the crossings will become public highways. Before that occurs, however, the crossings are only *potentially* public highways. If the construction is not completed in accordance with City specifications, the consent decree allows for the roadways to remain in private hands. As of now, the crossings are not public highways under the Code. The PUC properly dismissed the application because it may not exercise its jurisdiction until such time that the roadways are actually "open to the public as a matter of right for the purposes of vehicular traffic".

Next, we address petitioners' alternative argument that even if the railroad crossings were to remain privately owned, the PUC would not lack jurisdiction over them, particularly if they affect public safety. Pursuant to the Commonwealth's police power, they argue, the PUC has broad authority with respect to railroad crossings to protect the public's safety and welfare. If the PUC were to determine that the alteration and upgrading of the railroad crossings would likely prevent accidents involving the public, application of this police power would warrant the exercise of the PUC's jurisdiction, even if the crossings were to remain privately owned, the argument concludes.

In support of this alternative theory, petitioners direct our attention to two cases, *Pittsburgh Railways Co. v. Pennsylva-*

*nia Public Utility Commission,* 198 Pa.Superior Ct. 415, 182 A.2d 80 (1962) and *Pennsylvania Railroad Co. v. Pennsylvania Public Utility Commission,* 136 Pa.Superior Ct. 1, 7 A.2d 86 (1939). Both cases cite the principle that the Commonwealth, in the exercise of its police power, has entrusted to the PUC broad powers with respect to the crossings of highways and railroads, including the power to determine the manner by which such crossings shall be maintained or protected in the interest of preventing accidents and promoting safety. We do not dispute this power. However, we conclude that again, references to "highways" and "crossings" must be considered references to *public* highways according to our Supreme Court's interpretation of the Code language in *Delaware, Lackawanna & Western Railroad.*

Since we have previously concluded that there are no public highways at issue in the present matter, the PUC's broad authority with respect to railroad crossings is likewise inapplicable as a means of establishing PUC jurisdiction in this matter.

Accordingly, the order of the PUC is affirmed.

### ORDER

NOW, this 15th day of June, 1993, the order of the Pennsylvania Public Utility Commission, dated March 12, 1992, at No. A–00107780, is hereby affirmed.