## Yahn & McDonnell v. Board of Finance, Etc.

*Howard A. Silver, Scholl & Dougherty*, for plaintiff.
*George W. Keitel, Herbert B. Cohen*, for defendant.

RICHARDS, P. J., June 24, 1955.—The Cigarette Tax Act of June 14, 1935, P. L. 341, as amended, was reënacted and amended by the Act of May 13, 1947, P. L. 215. The latter act increased the cigarette tax from one cent to two cents per 10 cigarettes. Plaintiff paid tax at the increased rate on cigarettes sold between June 1 and June 13, 1947. This was done by adding additional stamps to stocks on hand bearing stamps for tax at the rate of one cent per 10 cigarettes, and by affixing stamps at the two cent rate on purchases of new stock. Later it concluded that this was error, and that it had overpaid the tax for the period in the sum of $9,372.11. Consequently, it petitioned the Board of Finance and Revenue, within the time allowed by law, for a refund of said amount. The board refused the refund on June 30, 1954. Plaintiff thereupon filed its complaint in mandamus seeking to compel the refund. The board filed preliminary objections which raised two propositions: (1) That the complaint did not state a cause of action and averred no facts showing arbitrary action by it; and (2) that defendant, under the law, is not entitled to a refund. The case has been duly argued and is now before us for disposition.

Before discussing the merits of the controversy, we wish to state that this case involves the effective date of the act. Defendant contends that it was effective June 1, 1947. Plaintiff argues that it was not effective

until June 14, 1947. This explains the period involved, to wit, June 1 to June 13, 1947.

## Discussion

Section 503 of The Fiscal Code provides:

"The Board of Finance and Revenue shall have the power, and its duty shall be, (a) To hear and determine any petition for the refund of taxes, . . . or other moneys paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled. . . ."

Subsection (e) thereof provides: "The action of the board on all petitions filed under this section shall be final." 72 PS §503.

No appeal, therefore, lies from the decision of the board.

In Travis v. Teter, 370 Pa. 326, at page 330, the Supreme Court stated:

"It is well settled that in a mandamus proceeding a Court can compel a public official who is vested with a discretionary power to exercise that discretion; but (unless the direction is *arbitrarily* or fraudulently exercised *or is based upon a mistaken view of the law*) it cannot interfere with or control the official's discretion or judgment." (Italics supplied.)

Since the present complaint charges *arbitrary* action, *based upon a mistaken view of the law*, we think we have authority to review the decision of the board. Consequently, we dismiss the first preliminary objection.

With respect to the effective date of the act of 1947, we subscribe to the views of defendant as reflected in its brief.

The State Cigarette Tax Act (72 PS §§3154-3165) was first enacted in 1935 for a limited period of two years, and was reënacted and amended by each succeeding regular session of the legislature for an addi-

tional two-year period until 1951, when the tax became permanent (Act of May 29, 1951, P. L. 471). In order to understand the question of statutory construction involved in the present case, it is necessary to examine the various effective date clauses as contained in the original Act of 1935 and the subsequent reënactments.

The cigarette tax was levied by the Act of June 14, 1935, P. L. 341, which provided in section 15 as follows:

"Section 15. This act shall become effective thirty days after its final enactment, and shall continue in effect until, and including, the thirty-first day of May, one thousand nine hundred thirty-seven."

Under that provision, the Cigarette Tax Act first went into effect on July 14, 1935, i.e., 30 days after June 14, 1935. This 30-day postponement was necessary to enable the Department of Revenue to set up adequate machinery for the collection and enforcement of the tax.

When the tax was reënacted by the Act of April 8, 1937, P. L. 220, the title indicated that the act was being reënacted and amended "by extending the provisions of the act for a further period of time". Section 15 was renumbered as section 14, and was amended by striking out the words "thirty-seven" and inserting in lieu thereof the words "thirty-nine".

With no material variation, this was the pattern followed in the 1939, 1941, 1943, 1945 and 1947 reënactments.

The title to the 1945 reënactment (Act of March 27, 1945, P. L. 71) indicated that it was an act to reënact and amend the Cigarette Tax Act "as previously reënacted and amended, by extending the provisions of the act for a further limited period of time". Section 14 of the original act continued to provide as follows:

"Section 14. This act shall become effective thirty days after its final enactment, and shall continue in effect until, and including, the thirty-first day of May, one thousand nine hundred (forty-five) *forty-seven*."

The 1945 reënactment consisted of two sections. Section 1 reënacted and amended the entire Cigarette Tax Act. Section 2 provided for the effective date of the act as follows:

"Section 2. This reënacting and amending act shall become effective immediately upon its final enactment."

It is clear that the reënacting and amending act became effective March 27, 1945, and that the life of the tax was extended to May 31, 1947, the end of the then current biennium. However, there was no change of rate in the tax up to this time.

The Cigarette Tax Act was further reënacted in 1947 by the Act of May 13, 1947, P. L. 215. This is the reënactment being construed in the present case. The title of the act indicated that the Cigarette Tax Act was being reënacted and amended:

". . . as previously reënacted and amended, by increasing the rate of tax . . . and by extending the provisions of the act for a further limited period of time."

Section 14 (renumbered section 13) provided:

"Section (14) *13*. This act shall become effective thirty days after its final enactment, and shall continue in effect until, and including, the thirty-first day of May, one thousand nine hundred (forty-seven) *forty-nine*."

Section 1 of the 1947 act, like the 1945 act, reënacted all 13 sections of the preëxisting Cigarette Tax Act. Section 2 then provided:

"Section 2. This reënacting and amending act shall become effective on the first day of June, one thousand nine hundred forty-seven."

The foregoing summary indicates that, in our consideration of this problem, we must differentiate between (1) the original act of 1935 imposing a State tax on cigarettes for the ensuing biennium (1935-1937); and (2) the 1947 act, which reënacted and amended the original act, as previously reënacted and amended in 1937, 1939, 1941, 1943 and 1945. Section 1 of the reënacting and amending (1947) act embraced all 13 sections remaining from the original (1935) act. Section 2 of the reënacting and amending act provided that it should become effective June 1, 1947.

When the cigarette tax was first imposed in 1935, the legislature made the tax effective 30 days after the date of final enactment, in order that the Department of Revenue would have sufficient time to print tax forms, licenses, tax stamps and hire administrative and investigating personnel. Since that date, i.e., July 14, 1935, the Cigarette Tax Act has been continuously in force, due to the various reënacting and amending acts. The 30-day provision is significant only as the date when the tax initially became effective in 1935.

The effective date of the Act of 1947, i.e., June 1, 1947, is controlling in the present case, for several reasons:

1. The effective date clause is simple and unambiguous when it states that "This reënacting and amending act", which can mean only the 1947 act, "shall become effective on the first day of June, one thousand nine hundred forty-seven". When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded: Lawrence Township School District Tax Case, 362 Pa. 377, 382 (1949); Commonwealth v. Chester County Light and Power Company, 339 Pa. 97, 99 (1940); section 51 of the Statutory Construction Act, 46 PS §551.

2. The increase in tax was included in the estimates of revenue for the biennium commencing June 1, 1947, and ending May 31, 1949. It would be unreasonable to hold that the legislature did not intend this increase in the tax rate to become effective until June 13, 1947. It must be presumed that the legislature did not intend an unreasonable result: Commonwealth v. Gill, 166 Pa. Superior Ct. 223, 229 (1950); section 52 of the Statutory Construction Act, 46 PS §552.

3. If it could be contended that the effective date in section 2 of the reënacting and amending act was in conflict with section 13 of the reënacted act, the effective date clause of the reënacting and amending act would be controlling, because it is last in order of date and position. Whenever several clauses in the same law are irreconcilable "the clause last in order of date or position shall prevail": Section 64 of the Statutory Construction Act, 46 PS §564. See also section 66, 46 PS §566.

4. Being a matter of legislative intent, the answer to this case has been specifically covered by the legislature in section 81 of the Statutory Construction Act, 46 PS §581, which reads as follows:

"Whenever a law reënacts a former law, the provisions common to both laws shall date from their first adoption. Such provisions only of the former law as are omitted from the reënactment shall be deemed abrogated, and only the new or changed provisions shall be deemed to be the law from the effective date of the reënactment."

This was the rule of the Pennsylvania cases even prior to the Statutory Construction Act: Harvey v. City of Hazleton, 81 Pa. Superior Ct. 1, 5 (1923); Commonwealth v. Provident Trust Company, 287 Pa. 251, 257 (1926). Section 81 of the Statutory Construction Act clearly applies, because the 30-day pro-

vision relied upon by plaintiff is common both to the Act of 1935 and to the reënactment of 1947. As a provision common to both laws, it must date from the date of the first adoption, i.e., June 14, 1935. This point is so clear as to render further discussion unnecessary.

5. We must presume "that the Legislature intends the entire statute to be effective and certain". Section 52 of the Statutory Construction Act of 1937, 46 PS §552; Department of Highways v. Pennsylvania Public Utility Commission, 141 Pa. Superior Ct. 376, 385 (1940). If the 1947 reënactment is construed as plaintiff contends, section 2 thereof, which makes the reënacting and amending act effective June 1, 1947, becomes surplusage, vain and meaningless. If the Commonwealth's construction prevails, full significance will be given both to section 13 of the reënacted Act of 1935 and to section 2 of the reënacting Act of 1947.

Under the foregoing authorities, the reënacting and amending Act of 1947 clearly became effective on the date which the legislature specified, i.e., June 1, 1947. The 30-day clause in section 15 of the old act (reenacted as section 14 and later as section 13), applied only in 1935, when the original act was adopted.

Plaintiff, in its supplemental brief, raises the question that it had one-cent stamps on 1,642,370 cigarettes on hand June 1, 1947. The additional tax paid thereon was $1,642.37. It now contends that the $1,642.37 was an overpayment regardless of the rest of its claim. This was not raised in the petition for a refund nor in the complaint. It is probably not properly before us. However, section 2 of the reenacted Act of 1935 defines "sale" as follows:

"SALE. "Any transfer for a consideration, exchange, barter, gift, offer for sale and distribution in any manner or by any means whatsoever."

Although the said cigarettes were in stock on June 1, 1947, and had stamps thereon at the rate of one cent per 10 cigarettes, they were not sold or distributed until after the effective date of the act. Hence, tax was due at the increased rate.

In view of all the foregoing, it follows that the board properly construed the act, that plaintiff did not overpay its tax, and that it is not entitled to a refund. Hence, the board did not act arbitrarily and the second preliminary objection must be sustained.

### Order

And now, to wit, June 24, 1955, the second preliminary objection of defendant is sustained and the complaint dismissed at the cost of plaintiff.