Argued December 12, 1938.
These appeals are by the boroughs of Conshohocken and West Conshohocken, Montgomery County, from an order of the Public Utility Commission allocating the cost of maintenance of a bridge over a stream and the facilities of public service companies. The appeals were argued together and, as the questions involved are the same, they will be considered in one opinion. We are all of the opinion that the order must be affirmed.
The bridge was constructed pursuant to an order of the Public Service Commission issued July 14, 1919. With its approaches it connected Ford and Forest Streets in the borough of West Conshohocken with Fayette Street in the borough of Conshohocken and spanned the Schuylkill River. It also passed over five grade tracks of the Reading Company in the borough of West Conshohocken and three tracks of the same railroad and the canal of Schuylkill Navigation Company in the borough of Conshohocken. The borough limits of each of those municipalities extend to low water *Page 299 
mark on the river so that the remainder of the bed of the stream is not within the borough limits. The bridge was provided with ramps for vehicular traffic and stairways for pedestrians for the accommodation of the public in the respective borough and the patrons of the railroad company. The bridge carries state highway route No. 46140.
The order of July 14, 1919, placed the cost of construction of the bridge upon the county of Montgomery and the Philadelphia 
Reading Railway Company, predecessor of the Reading Company, but made no provision for the expense of the maintenance of the bridge. Neither was there any arrangement made by the parties interested determining by whom the bridge should be maintained. The record discloses that the county of Montgomery maintained and repaired the structure and paid for the lighting of the same until January 1, 1936, the effective date of the Act of July 15, 1935, P.L. 1035, after which date the Department of Highways of the Commonwealth of Pennsylvania assumed the responsibility of the county relative to the maintenance of the bridge.
The Department of Highways, believing that the Commonwealth was not responsible for the entire expense of maintaining the bridge and for the lighting of the structure, and being desirous of having its liability determined, instituted this action by petition to the Public Service Commission filed October 27, 1936, requesting the commission to fix the responsibility for the expense of maintenance, repairs, and lighting of the bridge.
The commission, on December 13, 1937, issued an order placing the principal cost of the repairs of the structure upon the county of Montgomery and the Reading Company. The borough of Conshohocken was required, at its sole cost and expense, to maintain the Fayette Street approach to the bridge, exclusive of the roadway paving thereof, and to maintain the Mill Street *Page 300 
vehicular ramp including the roadway paving thereon. The borough of West Conshohocken was required, at its sole cost and expense, to maintain the concrete curbs and sidewalks on the two approaches in said borough connecting the highway on the bridge with Front Street and Ford Street. A portion of the cost of lighting the three stairways that led from the main bridge to the stations of the Reading Company was placed on that railroad company. The county of Montgomery was required to maintain the lighting facilities on the main bridge, on the Mill Street vehicular ramp leading from the bridge in Conshohocken borough, and on the vehicular ramp leading from the bridge to the station of the Reading Company and a mill in West Conshohocken borough. In turn, each of the boroughs was required to pay the county of Montgomery forty per cent of the actual cost of maintaining the lighting facilities on the main bridge and on the vehicular ramps.
The boroughs challenge the authority of the commission to place any portion of the cost of maintenance and repair and particularly of the lighting of the bridge upon either municipality, claiming that they are relieved from responsibility for maintenance generally by the Act of July 15, 1935 (36 P. S. § 2934) and for lighting in particular by Act of May 2, 1929, P.L. 1278 (16 P. S. § 722). Our problem is to determine whether the broad provisions of the Public Service Company Law and its successor, the Public Utility Law, are sufficient to sustain the order made, or whether the powers of the commission are limited by the Acts of 1935 and 1929, relied upon by the appellants.
By § 409 of the Public Utility Law of 1937, Act of May 28, 1937, P.L. 1053 (66 P. S. § 1179), the commission is given broad and exclusive powers as to the construction, relocation, alteration, or abolition of crossings of the facilities of public utilities by the facilities of other public utilities or by a highway, and as to "the manner and conditions in or under which such crossings *Page 301 
shall be maintained, operated, and protected to effectuate the prevention of accidents and the promotion of the safety of the public." By § 411 (66 P. S. § 1181) the resulting expenses are to be borne and paid "by the public utilities or municipal corporations concerned, or by the Commonwealth in such proper proportions as the commission may . . . . . . determine, unless such proportions are mutually agreed upon and paid by the interested parties."
The highway connecting the boroughs affected by the improvements ordered by the Public Service Commission in 1919 was crossed by facilities of public utilities in each borough, and it was by virtue of that fact that the Public Service Commission took jurisdiction and ordered the improvement to be made:Somerset Co. v. P.U.C., 132 Pa. Super. 585, 1 A.2d 806. When that order was made the Public Service Commission failed to provide for the maintenance and repair of the structure. The Public Utility Commission, which succeeded the Public Service Commission, by the very words of the statute had jurisdiction of matters arising by reason of the crossing of a highway and the facilities of the public utilities, just as the Public Service Commission would have had if it were now the governing body, and was authorized to complete that portion of the duties which were left undone by reason of the failure to provide for maintenance and repair.
The appellants suggest that the control of the commission over the maintenance and operation of the crossings did not give it the power to determine how the expense of lighting the structure should be met. There was ample evidence supporting the conclusion of the commission that the structure required lighting. Ramps and stairways led from the main line of traffic and the bridge and approaches carried footwalks. Under some circumstances where mixed traffic by foot and automobile is heavy, lights are as essential as guard rails. One of the prime purposes of the crossing legislation *Page 302 
was consideration for the safety of the traveling public and, as we have seen, the legislature directed the commission to see that the crossings were so maintained as to prevent accidents and promote the safety of the public. The evidence justified the conclusion of the commission that lighting was an essential item of safety.
That the boroughs are "municipal corporations concerned" in such an improvement as we have here and may be made to pay a share of the cost has been settled in principle by numerous cases: Lancaster Co. v. P.S.C., 77 Pa. Super. 495, 503;Paradise Twp. v. P.S.C., 75 Pa. Super. 208; Salem Twp. v.P.S.C., 76 Pa. Super. 374, 377; Somerset Co. v. P.U.C.,
supra (p. 594); Erie R.R. v. P.S.C., 271 Pa. 409, 114 A. 357.
The Public Service Company Law of 1913 which brought into existence a public service commission, gave the commission exclusive and plenary powers with relation to crossing of railroad tracks by highways and subsequent legislation has extended that jurisdiction to control of the crossings of the facilities of public utilities generally and highways, including the power to assess the cost of original construction and maintenance and repair on the Commonwealth, the utilities affected and the municipalities concerned. Powers formerly vested in the courts and the municipalities were transferred to the commission.
This bridge is not an ordinary county bridge spanning a stream where the facilities of utilities are not affected. The construction involved the crossing of a stream, the canal of a utility and tracks of a railroad in two boroughs. It affected the use of highways and the alteration thereof in two boroughs and became a part of the thoroughfares in each. The portions of the structure which were intended to carry traffic over the river could not be separated from the portions carrying traffic over the canal and the railroad tracks. The approaches, *Page 303 
ramps and stairways were essential to each service. No line can be drawn marking the division between the part of the bridge as a whole which served as a crossing of the river and the part which furnished an overhead crossing of a canal and two distinct sets of railroad tracks. The improvement constituted an integrated whole. We deem it to be clear that the commission had jurisdiction to provide for the maintenance and repair of the structure and to allocate the costs. In fact, we do not understand that the appellants seriously question that conclusion, but they do dispute the right of the commission to place any part of the expense on the boroughs. If such be the case it must be by virtue of some other legislation limiting the powers vested in the commission by the present Public Utility Law.
This entire bridge was constructed after an agreement between the utilities and the county of Montgomery pursuant to an order of the Public Service Commission made July 14, 1919 and unless there is contrary statutory authority the commission was, as we have shown, empowered to assess a portion of the cost of maintenance on the boroughs concerned. The appellants first point to the Act of 1935, an amendment to the Act of May 21, 1931, P.L. 147 and call attention to the fact that the county assumed the maintenance of the bridge until January 1, 1936, the effective date of that amendment, when responsibility for maintenance of the bridge was assumed by the Commonwealth and was continued until this petition was presented. That amendment provides that "Where any county or township is responsible for the construction or maintenance of any bridge on a State highway route carrying vehicular traffic over a stream, or over a stream and the facilities of any public service company, or on a continuation of a State highway route through any borough or incorporated town, . . . . . . the responsibility of such county or township shall be assumed by the Commonwealth, *Page 304 
except as hereinafter in this act provided." However, such responsibility is conditioned by the following provision contained in the same section: "This act shall not be construed to relieve any person, firm, association, or corporation from any obligation for the construction or maintenance of any such bridge under any agreement or order of court or under any order of the Public Service Commission heretofore or hereafter made."
Notwithstanding this amendment, no person, firm, association or corporation is to be relieved from the responsibility for the construction or maintenance of any bridge where such responsibility is imposed under the provisions of any previous or future order of the Public Service Commission. By § 13 (h) of the Public Utility Law (66 P. S. § 464 [h]), "Whenever the term `The Public Service Commission of the Commonwealth of Pennsylvania' occurs in any law, contract or document, or whenever in any law, contract or document reference is made to such commission, such term or reference shall be deemed to refer to and include the Pennsylvania Public Utility Commission created by this act so far as such law, contract or document pertains to matters which are within the jurisdiction of such commission."
Whether we give the words of the act of the legislature a literal or a broad construction, it certainly affects boroughs which are municipal corporations and we are dealing here alone with the liability of the boroughs. However, the terms here employed are comprehensive and would seem to include all persons, natural or artificial, including counties, boroughs and all others whose responsibilities are fixed by contract or by order of the Public Utility Commission acting under the powers conferred on it. This would seem to be the more reasonable construction as the legislature has disclosed a general policy to intrust to the commission the fixing of responsibility where the *Page 305 
elimination and protection of grade crossings is involved and the power of the commission is invoked. In many cases the elimination of grade crossings, just as here, involves the alteration of existing highways and is of a special advantage to the municipalities concerned thus differentiating such cases from those where an ordinary county or township bridge is involved. We therefore hold that the boroughs of Conshohocken and West Conshohocken are municipalities concerned and since the commission has so ordered those boroughs are responsible for a reasonable proportion of the cost of maintenance and repair.
The boroughs further urge that by § 722 of "The General County Law," Act of May 2, 1929, the responsibility and expense of lighting the bridge is placed on the county of Montgomery. That act provides: "The county commissioners of any county within which a county bridge is erected . . . . . . may supply and equip any county bridge within their respective counties with lights of any kind and character as they shall deem necessary. Any such county bridge more than eight hundred feet in length shall be supplied and equipped with lights." (Italics supplied.) The total length of this bridge is 1,342 feet. This section by its terms is limited to the subject of lighting county bridges.
"The authority of county commissioners to build a county bridge is derived from statutes, and the steps prescribed for this purpose must be pursued with at least reasonable strictness and diligence": Pgh. L.E.R.R. Co. v. Lawrence County, 198 Pa. 1, 3,47 A. 955. Section 35 of the Act of June 13, 1836, P.L. 555, provided that a bridge made a county bridge "be entered on record as a county bridge," although a bridge may be a county bridge even though the commissioners may not have preserved a proper record: Com. ex rel. Counsil v. Dickey, 262 Pa. 121, 104 A. 870.
Section 722 here relied upon is a part of "The General County Law, which applies to all the counties of *Page 306 
the Commonwealth except those of the first class and is part of Article IX which deals with bridges, viaducts and culverts. This act, as did the Act of 1836, recognizes a distinct class of bridges known as county bridges and provides for the entry of such bridges of record as county bridges. Except in cases of emergency (§ 713) a report of viewers and favorable action of a grand jury, a court of quarter sessions and the county commissioners is required before the county may erect or construct a new bridge or a bridge to take the place of an existing bridge over a stream or railroad (§ 751). This has been in substance the law of the Commonwealth for a century and the term "county bridges" has come to have a definite meaning. It is to such county bridges that § 722 by its very terms refers and the section is found in that part of the law that deals with county bridges.
The Public Utility Law provides a separate procedure by which bridges may be constructed and maintained when they involve the crossing of railroad tracks or other facilities of public utilities. Such bridges are not county bridges. The legislature recognized a frequently recurring situation where the elimination of grade crossings involved a more complicated situation than was found in the mere crossing of a river or creek. It often became necessary to change streets, location of tracks, etc. Such improvements involve a special benefit to utilities and municipalities and in such cases the legislature has seen fit to intrust to the commission the duty of imposing necessary costs and dividing it among the Commonwealth, the municipalities and utilities concerned.
As the record discloses that the present bridge was erected pursuant to an order of the Public Service Commission and the Public Utility Commission was justified in taking into account the advantages accruing to the boroughs, which were different from and in addition *Page 307 
to those enjoyed by the general public, we are of the opinion that § 722 does not here apply.
The appellants also complain that the commission by its order required the boroughs to contribute to the lighting of a portion of the bridge outside the respective borough limits and in the intervening township. We do not so interpret the order. The commission divided the expense of maintenance of the whole structure not by prorating each item of repairs and maintenance, but by assigning to the utilities one item, to the Commonwealth and the municipalities, including boroughs and county, other items. This was not an unreasonable method of accomplishing a fair distribution of the expense. As to the lighting, twenty per cent was placed upon the county of Montgomery and forty per cent on each of the boroughs. Taking into account the length of the bridge, ramps, etc., and the manner in which other expenses were apportioned, we cannot say that the order of the commission was unreasonable or arbitrary but on the contrary find that it is supported by the evidence of record. The residents of these boroughs enjoyed advantages in the lighting of the bridge that were not shared by the general vehicular traffic.
The order of the commission in each case is affirmed at the cost of the appellant.