## Department of Highways of Commonwealth, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued April 30, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

378

*George W. Keitel,* Assistant Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellant.

*Solomon Freedman,* with him *Paul D. Larimer* and *Harry M. Showalter,* for appellee.

*John Phillips Saylor,* with him *A. M. Donnan* and *John T. Brady,* for intervenors.

OPINION BY PARKER, J., July 20, 1940:

This is an appeal by the Department of Highways from certain orders of the Public Utility Commission placing upon that department a portion of the cost of maintenance, alteration, and repair of a structure made to eliminate a grade crossing over two railroads. We are all of the opinion that the orders should be affirmed.

In 1910, Prospect Viaduct in Johnstown, a city of the third class, was constructed "under the joint sponsorship" of that city and the Pennsylvania Railroad Company. It was erected over the tracks of the Conemaugh & Black Lick Railroad Company and of the Pennsylvania Railroad Company and connected two public streets in that municipality, the major portion of the cost having been borne by the last-named railroad and the balance by the city. On September 28,

1938, the city made complaint to the commission alleging that the viaduct was in need of strengthening, alterations, and repairs and praying that the commission take jurisdiction, order the alterations and repairs, and apportion the cost.

The commission took jurisdiction, ordered the alterations and repairs to be made, apportioned the cost thereof, and fixed the responsibility for future maintenance. The net cost, after a contribution of forty-five per cent of such cost by the federal P.W.A., was distributed among the railroad companies, the city, the County of Cambria, and the Department of Highways of the Commonwealth. The order directed the city to do the work and, inter alia, required the highway department to provide some detour signs during the progress of the work, pay ten per cent of the net cost of such alterations and repairs, and, after the completion of the improvement, "maintain, in a safe and satisfactory condition, the roadway pavement on the entire viaduct."

The sole appellant is the Department of Highways, and its complaint is that there is no authority under statutory law for imposing any part of such costs or maintenance on that department. Before turning our attention to the specific statutes to be construed, we would call attention to some additional facts and certain general divisions or distribution of power by the legislature to agencies created by it.

State highway routes 52 and 720 pass over the viaduct, one of these routes sustaining a heavy volume of vehicular traffic by reason of being a main artery of travel from and through that city to the William Penn Highway and the county seat at Ebensburg. This viaduct is not an ordinary city or county bridge spanning a stream but involves the crossing of a public highway by the facilities of two railroads. The comprehensive powers given the commission in connection with

the elimination and maintenance of grade crossings was enlarged upon by Judge (now Justice) LINN in the case of *Schuylkill County v. P. S. C.*, 77 Pa. Superior Ct. 504, 510.

"The legislature intended to place matters pertaining to the state highway system, its construction and maintenance, under the authority of the Department of Highways, subject to the limitation that where any highway, state, county, or township, is crossed by the facilities of a public utility, then matters pertaining to the crossing are subject to the exclusive jurisdiction of the Public Utility Commission": *Somerset County v. P. U. C.*, 132 Pa. Superior Ct. 585, 598, 1 A. 2d 806. The powers of the commission are plenary with relation to crossing of railroad tracks by highways and the construction of bridges or viaducts for the elimination of grade crossings of railroads. A different situation is presented than where the mere crossing of a stream is involved: *Boro. of West Conshohocken v. P. U. C.*, 135 Pa. Superior Ct. 295, 302, 5 A. 2d 590. Also, see Administrative Code of 1929, art. XX (71 PS §511).

By §411 of the Public Utility Law (66 PS §1181), the resulting expenses of the construction, relocation, alteration, maintenance or abolition of crossings of railroads and highways are directed to be borne and paid "by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties": *Boro. of West Conshohocken v. P. U. C.*, supra (p. 301).

The appellant contends first that the Act of June 22, 1931, P. L. 720, §2 (36 PS §103), the act by which state highway routes 52 and 720, passing over the viaduct were made state highways, takes from the Public Utility Commission any power to place upon the Commonwealth any portion of the cost of abolishing grade

crossings or of maintaining and repairing structures erected for that purpose, and, second, that in any event the alleged power to impose such costs on the Commonwealth would not warrant the order which placed the Commonwealth's share on the Department of Highways.

In support of the first proposition appellant argues that the part of the Public Utility Law of 1937 which gives the commission exclusive jurisdiction with respect to the construction, alteration, relocation, or abolition of grade crossings (§§409-411, Act of May 28, 1937, P. L. 1053; 66 PS §§1179-1181) is but a re-enactment of the corresponding part of the Public Service Company Law of 1913, art. II, §1 (t), and art. V, §12, of the Act of July 26, 1913, P. L. 1374 (66 PS §§108, 571-577), and that the Act of 1931 modifies the Public Utility Law as it did the Public Service Company Law. "A law which re-enacts the provisions of an earlier law shall not be construed to repeal an intermediate law which modified such earlier law. Such intermediate law shall be construed to remain in force and to modify the re-enactment in the same manner as it modified the earlier law": Statutory Construction Act of 1937, P. L. 1019 (46 PS §583).

Whether the portion of the Public Utility Law dealing with the crossing of highways by tracks of a railroad is such a re-enactment of the corresponding provision of the Public Service Company Law as calls for the application of the rule stated in §83 of the Statutory Construction Act presents an interesting question. "That a re-enacting statute which makes no changes in its substantive law should be construed as continuing the law as it existed before its passage, unless the legislative intent is manifestly to the contrary through irreconcilable inconsistencies with, or a particular reference there made to, an intermediate statute, seems to be the rule deduced from the cases": *Com. v.*

*Provident Trust Co.,* 287 Pa. 251, 257, 134 A. 377. The ultimate question is whether the later law is in fact a re-enactment. The changes in the form and phraseology are radical. Provisions are eliminated and others are added to such an extent that it is not easy to determine whether the substantive law involved has been so changed that the new act may not be said to be a re-enactment of the former. However, it is not necessary to decide that question as, in our opinion, the order of the commission is not in conflict with the intermediate law.

Section 2 of the Act of 1931 added to the state highway system a large number of city streets, including routes 52 and 720. It also placed limitations on the responsibilities of the Commonwealth in taking over such streets. Section 4 (36 PS §105) provided in part as follows: "This act is not intended, and shall not be construed,

"(a) [To place upon the Commonwealth any duty to regulate traffic on or to police such streets;]

"(b) To place upon the Commonwealth any obligation for the maintenance, construction, reconstruction or resurfacing of said streets other than the base or surface courses;

"(c) To place upon the Commonwealth, through the Department of Highways, any obligation to maintain, construct or reconstruct any structure of any kind or character whatsoever situate upon or forming part of any city street, or section thereof, described in section two of this act, except that the Secretary of Highways may assume the obligation to maintain, construct or reconstruct drainage structures with a total spanned length not exceeding ten feet, measured along the center line of the street, other than storm or sanitary sewers, and which were the sole obligation of the city prior to the passage of this act. Responsibility for the construction, reconstruction and maintenance of any other

structures shall remain with the city, person, association, or corporation responsible therefor at the date of the approval of this act;

"(d)  To authorize any assessment to be made against the Commonwealth by reason of or to assist in the elimination of any grade crossing on any street described and designated in section two of this act, *and no such assessment shall hereafter be made under any act of Assembly heretofore enacted;* (Italics supplied.)

"(f) [To place upon the Department of Highways any authority to regulate traffic, parking, etc.]"

By section 5 (36 PS §106) it was provided that the Department of Highways should be responsible for the maintenance, construction, reconstruction, and resurfacing of the streets but such responsibility should be limited to doing such work to a total of twenty feet in width between the established curb lines.

When the routes in question were made state highways the viaduct had been constructed and the routes passed over the viaduct.  The wording of the act shows that the legislature had such situations in mind when it limited the duties of the Commonwealth as it did. The form of the limitation is also significant for it provided principally that in certain respects the responsibilities of the Commonwealth should not be increased by the mere taking over of the streets and that it should not thereby be made responsible for the maintenance, construction, or reconstruction of drainage structures more than ten feet in length, but that such responsibility should be as it was when the act was passed. Before the passage of the act the Commonwealth was subject to liability in such cases where grade crossings were eliminated, constructed, reconstructed, or repaired.

Clause (d) first provides that the passage of the act shall not make the Commonwealth liable to an assessment for the *elimination* of any grade crossing and then that no such assessment, that is for elimination,

shall hereafter be made under any act of assembly before enacted. This clause deals only with elimination of grade crossings on the highways taken over by the act and responsibility for the cost, or a part of the cost. There is not a word limiting the power of the commission to assess the Commonwealth for maintenance, alterations, or repairs.

As we have pointed out, all of the expense of the elimination of this crossing was met in the year 1910, long before the Act of 1931 was passed and prior to the enactment of the Public Service Company Law. The legislature was careful to provide in schedule (c) that the responsibility for *maintenance, construction, or reconstruction* of bridges generally should not be placed on the Commonwealth by the mere taking over of the roads and such responsibility should remain as it was, but when it came to take affirmatively from the commission the power to make assessments against the Commonwealth it only subtracted the power to assess the Commonwealth for *elimination.*

The Act of 1931 evinces a clear intention on the part of the legislature to place on the Commonwealth the duty of maintaining the surface course and base of the streets between curbs. That is all that the commission required of the Commonwealth with reference to maintenance. It has been required to bear only a small percentage of the cost of the alterations and repairs, clearly in proportion to the use of the viaduct by the people of the whole state as compared with use by the people of Cambria County and Johnstown.

Finally, the appellant argues that in any event there is no statutory authority for assessing the Department of Highways with the Commonwealth's share of the cost for alterations, repairs, and maintenance. The Public Service Company Law (§12, par. 6, art. V; 66 PS §576) provided how the share of cost imposed on the Commonwealth should be recovered and directed

that it should "be paid out of any funds specifically appropriated for such purpose or generally appropriated for the improvement of the roads or highways of the Commonwealth." This provision dealt with amounts due for property taken and amounts due as a share of the improvements made. When the legislature repealed that statute and enacted the Public Utility Law, changes were made at least in the form and phraseology of the sections dealing with grade crossings. The wording with relation to the power of the commission to assess a share of the cost on the Commonwealth was substantially the same in the two acts, but in treating the subject of recovery of such share the new law is not specific and, as a consequence, appellant insists that it is so ambiguous that it cannot be said that any authority is given to collect anything from either the Commonwealth or the Department of Highways. The new law did provide that sums due from the Commonwealth for adjacent property taken should be paid "out of any funds specifically appropriated for the improvement of the roads or highways of the Commonwealth": §411(b) (66 PS §1181 [b] ). The legislature failed to state specifically how the portion charged against the Commonwealth should be paid.

Nevertheless, we think there is little difficulty in discovering the legislative intent. It cannot be questioned that the legislature gave the commission power, subject to certain exceptions, to place a share of the cost in grade crossing cases on the Commonwealth, and we have held that it gave that power in this case notwithstanding the Act of 1931. This was not an idle gesture by the legislature and we may resort to established rules of construction to discover the intent and accomplish the end contemplated. We must presume "that the Legislature intends the entire statute to be effective and certain": Statutory Construction Act of 1937, §52 (46 PS §552).

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—...... the former law, if any, including other laws upon the same or similar subjects": Idem, §51 (46 PS §551). Such an examination of prior and contemporaneous statutes will show that in almost all of the statutes dealing with the responsibility of the Commonwealth for expenses in connection with improvements at grade crossings, the legislature has treated the Department of Highways as its agency for meeting such responsibilities. For example, note the terms of the Act of 1931, supra, and numerous other acts.[1] There are a few instances in which appropriations of this general nature have been made available directly to the Public Service Commission, but these are the exception. The commission in such cases was acting in a semi-judicial capacity and not as the agent of the Commonwealth, for the care and maintenance of highways is placed in the hands of the Department of Highways.

As we said in *Ligonier V. Ry. Co. v. P. S. C.*, 83 Pa. Superior Ct. 502, 506, quoting from *Erie R. R. Co. v. P. S. C.*, 77 Pa. Superior Ct. 196, 205: " 'It is quite clear there was no legislative intent to confuse the powers of these two great departments nor to make one dependent on the other, save and save only where a highway was, or was to be crossed at grade by, or was to be carried over or under the tracks or facilities of a public service company. Within its own proper sphere each was the state itself.' It was also stated that the plan proposed in that case could have been carried out by the State Highway Department 'without either aid or interference from the Public Service Commission.' "

By article XX of the Administrative Code of 1929

---

[1] Act of May 31, 1911, P. L. 468; Act of May 7, 1929, P. L. 1566; Act of June 11, 1935, P. L. 321 (36 PS §1756); Act of May 1, 1929, P. L. 1054 (36 PS §2931).

(71 PS §511, et seq.), the Department of Highways is required to mark, build, rebuild, repair, and maintain state highways and is given exclusive authority and jurisdiction over the same. It is at the same time authorized to make contracts for constructing and maintaining them. The Public Utility Commission has no such power. The viaduct in question is a part of two state highways.

The most significant circumstance is that the legislature, by the Act of May 1, 1929, P. L. 1046 (72 PS §3564), provided, after disposing of certain specific matters, that the remainder of the money from time to time in the motor license fund should be appropriated to the Department of Highways for the following purposes: "(e) For maintaining, reconstructing, replacing and repairing, or assisting in maintaining, reconstructing, replacing, and repairing State highways, State-aid highways, and any other highways which the department may be authorized to maintain, reconstruct, replace and repair, or assist in maintaining, reconstructing, replacing, and repairing, and of such bridges as the department may be authorized by law to maintain, reconstruct, replace and repair, or to assist in maintaining, reconstructing, replacing, and repairing." The clause quoted was re-enacted without change by Act of June 29, 1937, P. L. 2412 (72 PS §3564, supp.)

The Department of Highways was a necessary party to this proceeding: *Penna. R. R. Co. v. P. S. C.,* 118 Pa. Superior Ct. 380, 394, 179 A. 850. It appeared as the agent of the Commonwealth in a matter where it was by statute directed to act. The legislature followed this by placing the necessary funds in the hands of that department to meet just such obligations.

If it were of any importance the orders could be modified by substituting "Commonwealth" for "Department of Highways", but the result would be precisely the same. On the other hand, the Department of High-

388

ways was the designated branch of the Commonwealth which represented its interests at the hearing and upon whom is placed the responsibility for executing the commitments of the Commonwealth. We therefore think that the orders should be affirmed as made.

Orders affirmed.