Scott Township, Appellant, *v.* Pennsylvania
Public Utility Commission.

Argued November 13, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

*Maurice Louik,* with him *David M. Harrison, H. David Rothman,* and *Harrison & Louik,* for township, appellant.

*Morris Mindlin,* Assistant Counsel, with him *Thomas M. Kerrigan,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*Charles J. Queenan, Jr.,* with him *Willis McCook Miller,* and *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for railroad, intervening appellee.

176

OPINION BY RHODES, P. J., December 9, 1958:

This is an appeal by the Township of Scott, Allegheny County, from an order of the Pennsylvania Public Utility Commission allocating to the township a portion of the cost of maintenance of a bridge at a highway-railroad crossing. The appeal questions the jurisdiction of the commission; in the alternative the sufficiency of the evidence to support the order is challenged. The commission is also charged with an abuse of discretion in refusing a petition of the township for rehearing.

On October 28, 1957, the Pittsburgh & West Virginia Railway Company applied to the commission for the allocation of the costs of maintaining a bridge over which the Old Bower Hill Road in Scott Township crosses the grade of its track. The Pennsylvania Department of Highways and the Township of Scott filed answers protesting the application. A hearing was held on January 13, 1958. From the record it appears that a bridge existed at this crossing prior to 1918, and that in 1918 the present bridge was constructed by virtue of an order of the commission. The order for construction in 1918 directed the railroad to maintain the guard rails on the approaches, but with respect to all other maintenance it was silent. Since 1918, however, the railroad has voluntarily borne all costs of maintenance. Over the past several years the annual cost of maintenance has averaged $320. In 1957, the railroad replaced the plank deck of the bridge with metal grating at a cost of $17,952. A witness testified that at the time of the hearing the bridge was "shipshape and now up to date." It was shown that the nature and extent of the traffic over the bridge had changed since 1918; and that traffic was likely to be increased because of the construction of the John Kane Memorial County Hospital in the vicinity, and

the widening and improvement of two state highways which are connected by the Old Bower Hill Road. A traffic count established that approximately 550 automobiles and 100 trucks use this bridge every twenty-four hours.

The railroad indicated that it would be willing to continue to maintain the substructure and superstructure of the bridge, but it would have some other agency maintain the roadway, including the bridge floor members.

The commission, by its order of June 2, 1958, approved the application, and ordered that the Township of Scott thereafter maintain, in a safe and proper condition, the steel grating floor, the steel curbs and guard railing on the bridge, as well as the highway approaches to the bridge, including the guard fence. The railroad was ordered to maintain, at its sole cost and expense, the substructure and the remainder of the superstructure of the bridge.

The jurisdiction of the commission to entertain and act upon the present application is clear. The extent of the commission's authority and jurisdiction is found in sections 409 and 411 of the Public Utility Law. *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 393 Pa. 639, 643, 145 A. 2d 172. Section 409 (b) of the Law, 66 PS §1179 (b), specifically provides: "The commission is hereby vested with exclusive power to appropriate property for any such crossing, and to determine and prescribe, by regulation or order, the points at which, and the manner in which, such crossing may be constructed, altered, relocated or abolished, and the manner and conditions in or under which such crossings shall be maintained, operated, and protected to effectuate the prevention of accidents and the promotion of the safety of the public." See, also, section 411 (a) of the Law, 66 PS §1181 (a); *De-*

*partment of Highways v. Pennsylvania Public Utility Commission*, 141 Pa. Superior Ct. 376, 380, 14 A. 2d 611. By section 409 (b), 66 PS §1179 (b), the commission is given the exclusive power over "the manner and conditions in or under which such crossings shall be maintained." Appellant would limit the application of the latter section, and consequently the jurisdiction of the commission, to situations in which the application for maintenance is connected with an original application for construction or an application for repair of a bridge presently in a state of disrepair. It is argued that "Nowhere has the Commission assumed or the courts sustained jurisdiction simply upon an application for future maintenance costs unrelated to any original order supported by substantial evidence showing a need to correct existing conditions." Since the bridge is presently in good condition as a result of recent renovations made by the railroad, appellant takes the position that there is no need for an order concerning maintenance. In our judgment the Law reveals no such limitations on the jurisdiction of the commission. While usually an order for maintenance is associated with an order of original construction or an order requiring the correction of a bridge in disrepair, the power conferred upon the commission to determine and prescribe the manner and conditions as to maintenance is not restricted to those situations. Maintenance is a continuing matter. Admittedly the original order of construction in 1918 contained no provision for future maintenance and repair of the bridge except to require the railroad to maintain the guard rails on the approaches. Although the bridge, by voluntary action of the railroad, may presently be in good condition, there is no obligation by virtue of an order of the commission upon either the railroad or the municipality to keep it in such condition. If

there is no responsibility thereby upon anyone concerned, the bridge would come into a state of disrepair with use and the passage of time. We do not believe the Legislature intended that the public should be required to wait until the bridge was in such a state, and possibly had become unsafe, before the commission would have jurisdiction to make an order providing for its maintenance. The fact that the original order made no provision for general maintenance of the bridge would not take away from the commission the power on the present application to correct that prior deficiency. One of the primary purposes of the commission's power to provide for maintenance is, as stated by section 409 (b), 66 PS §1179 (b), "to effectuate the prevention of accidents and the promotion of the safety of the public." Such beneficial purpose should not be lightly disregarded by the creation of technical limitations which are not clearly stated in the Law. Moreover, the commission's power is not lost because of the delay in its exercise, and liability for such maintenance is not avoided by such delay.

In *Conshohocken Borough v. Pennsylvania Public Utility Commission*, 135 Pa. Superior Ct. 295, 5 A. 2d 590, this Court affirmed an order of the commission of 1937 allocating the costs of maintenance of a bridge which had been built pursuant to an order of the commission in 1919. The original order for construction in 1919 had made no provision for maintenance. We there stated (page 303 of 135 Pa. Superior Ct., page 593 of 5 A. 2d) : "We deem it to be clear that the commission had jurisdiction to provide for the maintenance and repair of the structure and to allocate the costs." The public is entitled to have crossing facilities continuously maintained in a safe condition. The responsibility for that maintenance should be definitely determined by the commission under the provisions of the

180

Law. "The determination of those who are responsible for the installation and maintenance of facilities at grade crossings[1] and the enforcement of such decision affects directly public safety and welfare. To deny to the commission the power to fix the initial liability for the maintenance of those facilities deemed necessary by the commission for the safety and welfare of the public would be to defeat the very purpose of this legislation." *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission,* 136 Pa. Superior Ct. 1, 7, 7 A. 2d 86, 88.

A pertinent statement of the power of the commission appears in *Pittsburgh & Lake Erie R. R. v. McKees Rocks Borough,* 287 Pa. 311, 319, 135 A. 227, 230: ". . . the commission has power to require those immediately concerned to maintain an existing elevated crossing, or bridge, and to contribute toward the cost of such maintenance in the manner and proportions ordered by that body; . . ."

The fact that the prior bridge was constructed about 1904 by the railroad does not affect the commission's jurisdiction. The Act of February 19, 1849, P. L. 79, §12, 67 PS §381, which places the obligation for repair of certain crossings upon railroads, does not limit or restrict the exclusive jurisdiction of the commission over public crossings under the Public Utility Law. See *Delaware, Lackawanna & Western Railroad Company v. Shuman,* 382 Pa. 452, 457, 115 A. 2d 161. See, also, *Wilkes-Barre v. Pennsylvania Public Utility Commission,* 164 Pa. Superior Ct. 210, 63 A. 2d 452.

Finally appellant claims that the evidence to sustain the order of the commission is insufficient. In reviewing the evidence to determine its sufficiency, it

---

[1] This case involved a bridge over the grade of the tracks of the railroad company.

may be well to bear in mind that there had been no previous order for general maintenance of the bridge, and that in this respect the application was equivalent to an initial application for determination of the responsibility for maintenance. This is not an application to change a previous order of maintenance due to changed conditions and circumstances which might possibly be entertained under the commission's continuing jurisdiction over crossings. See *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission,* 154 Pa. Superior Ct. 272, 275, 35 A. 2d 584.

A brief summation of the evidence establishes its sufficiency. The railroad introduced evidence of the location, design, and physical structure of the bridge which carries the Old Bower Hill Road over its track in Scott Township. Old Bower Hill Road is a public road maintained by appellant. There was evidence of the nature and cost of yearly maintenance required to keep the bridge in repair. In 1957 the railroad expended $17,952 to replace the timber deck with metal grating. The bridge was originally designed to carry primarily horse-drawn vehicles and the type of rural traffic present in 1918. Since 1918 the type and the character of the traffic have changed and the volume has increased. Naturally the result has been greater wear and tear on the bridge. The traffic survey from December 27, 1957, to December 29, 1957, indicated that an average of approximately 550 automobiles and approximately 100 trucks use the bridge every day. In the winter season the use of chains on vehicles and the salting and cindering of highways have tended to increase maintenance costs. Such conditions, of course, did not exist at the time the present bridge was constructed. A witness for the railroad testified that he was familiar with the area; that the traffic over the

bridge has increased in recent years; and that it will continue to increase due to the construction of the John Kane Memorial County Hospital in the vicinity, and due to the improvement and widening of two state highways which are connected by the Old Bower Hill Road.

Appellant presented no witnesses before the commission. The sufficiency of the evidence is free from doubt; it affords a basis for the administrative determination and the allocation of maintenance costs by the commission in pursuance of the legislative mandate to promote the safety of the public. Although it was not essential to this application, the evidence established a change in the nature of the traffic presently using the bridge compared with the nature of the traffic using it when it was constructed and for which it was designed. As stated there is a relatively substantial number of vehicles using this route daily. It is also reasonably certain that traffic would increase due to the construction of the hospital and the improvement of two state highways in the vicinity. Giving consideration to these circumstances and other enumerated factors, including the annual cost of maintenance, it was permissible for the commission to conclude that it would be fair and reasonable to require the municipality to bear the cost of maintenance of that portion of the bridge most affected by traffic conditions.

There is precedent for this action of the commission. In *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission,* supra, 136 Pa. Superior Ct. 1, 3, 7 A. 2d 86, this Court affirmed an order of the commission allocating the responsibility of maintaining the substructure and superstructure of a bridge to the railroad and the responsibility of maintaining the roadway planking on the bridge to the Department of Highways.

The commission was not required to allocate the costs in this case between the railroad and the municipality, but it had the power to do so on the facts appearing in the record. The order of the commission is reasonable and is in conformity with the Law; it will not be disturbed by this Court. *Department of Highways v. Pennsylvania Public Utility Commission,* 179 Pa. Superior Ct. 376, 384, 116 A. 2d 855.

Appellant filed a petition with the commission requesting a rehearing. The petition was denied. On appeal it is argued that the refusal to grant the rehearing constituted a clear abuse of discretion in view of the purported lack of jurisdiction of the commission over the application of the railroad, and in view of the asserted absence of evidence to support the allocation to appellant of a portion of the maintenance costs. Under the circumstances we find no abuse of discretion on the part of the commission in refusing the petition. See *Pittsburgh Railways Company v. Pennsylvania Public Utility Commission,* 180 Pa. Superior Ct. 201, 215, 216, 119 A. 2d 804. The petition does not set forth any new or substantial evidence which had not been, or which could not have been, fully presented to and considered by the commission. See *Byers v. Pennsylvania Public Utility Commission,* 176 Pa. Superior Ct. 620, 625, 109 A. 2d 232.

The order of the commission is affirmed.