473 A.2d 997

**CITY OF PHILADELPHIA, Appellee,**

v.

**PHILADELPHIA ELECTRIC COMPANY, Pennsylvania Public Utility Commission and Bell Telephone Company of Pennsylvania, Appellants.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1984.

Decided March 16, 1984.

314

Edward G. Bauer, Jr., Eugene J. Bradley, John J. Gallagher, Donald F. Clarke, William M. Posner, Philadelphia, for appellant.

Jerry Rich, John J. Gallagher, John B. Wilson, Harrisburg, for Pa. P.U.C.

William M. Posner, Philadelphia, for Bell of Pa.

Michael B. Tolcott, Philadelphia, for City of Philadelphia.

Rudolph A. Chillemi, Philadelphia, for Phila. Elec. Co.

Leroy S. Zimmerman, Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

The question raised by the instant appeals is whether the existence of a permit to occupy a rail-highway crossing, issued by a municipality to a public utility on the condition that the utility assume financial responsibility for any relocation of its facilities necessitated by a public project,

divests the Pennsylvania Public Utility Commission ("Commission") of jurisdiction to allocate the utility's relocation costs to the municipality, where those costs have not been paid at the time of the Commission's decision.

## I.

On January 10, 1980, the City of Philadelphia ("City") filed an application with the Commission for approval of the reconstruction of a deteriorating railroad bridge which carried 67th Street over and above the grade of the tracks of the National Passenger Railroad Corporation ("AMTRAK"). The City requested reconstruction of the bridge, exemption from the Commission's minimum overhead clearance regulations and allocation of costs and expenses incident to the reconstruction. The City's application named AMTRAK, Bell Telephone Company of Pennsylvania ("Bell"), Philadelphia Gas Works ("PGW"), Southeastern Pennsylvania Transportation Authority ("SEPTA") and Philadelphia Electric Company ("PECO") as utilities concerned in or affected by the proposed construction.

A hearing before an administrative law judge was conducted in Philadelphia on May 20, 1980. At the hearing the City requested that Bell and PECO be required to relocate their facilities at their own cost and expense because they occupied a public right of way. Bell's facilities consisted of three telephone cables in a conduit on the footway of the bridge. The City established the existence of permits issued by the Board of Highway Supervisors of the City's Department of Public Works in 1918 and 1952 to open and structurally occupy a portion of the highway and/or bridge in question. The rules and regulations attached to the 1918 permit issued to Bell contain the following condition:

Change in Location of Existing Structures:

If, in the construction of water or gas mains, sewers, or any other municipal work, it shall become necessary to change the location of any existing privately owned structures occupying highways, their location shall be changed, at the sole expense of the owners, to such new

locations as shall be directed by the Board [of Highway Supervisors].

Bell's 1952 permit contains a similar regulation.

PECO's involvement in the proposed project was based on the presence of two poles, adjacent to the abutment of the bridge, which suspended PECO power lines. A PECO representative testified that, assuming the accuracy of the City's plans, the poles would not be affected by the reconstruction and thus PECO anticipated no relocation costs. PECO requested, however, that any relocation expenses it might incur be reimbursed to the extent that federal funding was available to the City. While it was established that part of PECO's facilities occupied a public right of way, no documentary evidence was introduced as to PECO's authorization to place and maintain its poles therein.

On September 25, 1980, the administrative law judge issued an initial decision approving the City's application and directing the utilities to furnish all material and do all work necessary, at their initial cost and expense, to alter and/or relocate their facilities from the crossing area so as not to interfere with construction. The administrative law judge further recommended reimbursement by the City of relocation costs as follows:

| | |
|---|---|
| AMTRAK | 100% |
| PECO | 75% |
| Bell | 75% |
| PGW | 100% |
| Philadelphia Water Department | 100%[1] |

The City, Bell and PECO excepted to the portion of the decision assigning 75 percent of the relocation costs of Bell and PECO to the City. The utilities were urging 100 percent reimbursement while the City disclaimed all responsibility for payment of those costs. By order and opinion of November 20, 1981, the Commission directed that Bell and PECO bear the initial cost and expense of relocation and

1. The City's plans for the reconstruction revealed that Philadelphia Water Department facilities would be affected.

that, upon completion of the project, *100 percent* of the actual costs of Bell and PECO be reimbursed by the City.

██ The City appealed to the Commonwealth Court from that determination, and Bell and PECO intervened. On April 17, 1983 the Commonwealth Court reversed the Commission's allocation order as to Bell and PECO. *City of Philadelphia v. Pennsylvania Public Utility Commission,* 73 Pa.Commw. 325, 457 A.2d 1338 (1983). The Commonwealth Court held that the utilities were responsible for their own relocation costs. The Commission, Bell and PECO [2] petitioned this Court for allowance of appeal, and we agreed to review the Commonwealth Court's order. For the reasons which follow we reverse the Commonwealth Court and reinstate the Commission's order.

## II.

██ We begin our inquiry by recognizing that the authority of the Commission must arise either from the express words of the pertinent statutes or by strong and necessary implication therefrom. *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791 (1977); *Allegheny County Port Authority v. Pennsylvania Public Utility Commission,* 427 Pa. 562, 237 A.2d 602 (1967); *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 393 Pa. 639, 145 A.2d 172 (1958); *Day v. Public Service Commission,* 312 Pa. 381, 167 A. 565 (1933); *Citizens Passenger Railway Co. v. Public Service Commission,* 271 Pa. 39, 114 A. 642 (1921); *Behrend v. Bell Telephone Co.,* 257 Pa.Super. 35, 390 A.2d 233 (1978); *Department of Highways v. Pennsylvania Public Utility Commission,* 198 Pa.Super. 87, 182 A.2d 267 (1962); *Du-*

**2.** In its Brief PECO states that "[a]s it turned out, none of [its] facilities had to be relocated because of any interference with the reconstruction of the bridge" but that "[d]espite the fact that the City would have no financial obligation to PECO for its relocation costs, the City included it in appealing the PUC's Decision." Brief for PECO at 6. As PECO, by its own admission, is not involved in the controversy before this Court, its appeal must be dismissed as moot. *See Pennsylvania Coal Mining Association v. Commonwealth, Department of Environmental Resources,* 498 Pa. 1, 444 A.2d 637 (1982).

*quesne Light Co. v. Pennsylvania Public Utility Commission*, 164 Pa.Super. 166, 63 A.2d 466 (1949); *Pittsburgh v. Pennsylvania Public Utility Commission*, 157 Pa.Super. 595, 43 A.2d 348 (1945); *City of Erie v. Pennsylvania Electric Co.*, 34 Pa.Commw. 326, 383 A.2d 575 (1978). It is axiomatic that the Commission's power is statutory; and the legislative grant of power to act in any particular case must be clear. *Delaware River Port Authority v. Pennsylvania Public Utility Commission, supra; Day v. Public Service Commission, supra; Swarthmore Borough v. Public Service Commission*, 277 Pa. 472, 121 A. 488 (1923); *Felix v. Pennsylvania Public Utility Commission*, 187 Pa.Super. 578, 146 A.2d 347 (1958); *West Penn Railways v. Pennsylvania Public Utility Commission*, 135 Pa.Super. 89, 4 A.2d 545 (1939).

Before considering the statutory provisions specifically involved in this case, a historical review of this area is informative. Under the earlier case law of the Commonwealth, non-transportation utilities were permitted to occupy highway rights-of-way free of cost, subject and subordinate to the state's police power to control and regulate the highways for the benefit of the public. *Delaware River Port Authority v. Pennsylvania Public Utility Commission, supra; Delaware River Joint Commission Case*, 342 Pa. 119, 19 A.2d 278 (1941); *Philadelphia Electric Co. v. Commonwealth*, 311 Pa. 542, 166 A. 892 (1933); *Scranton Gas and Water Co. v. Scranton City*, 214 Pa. 586, 64 A. 84 (1906); *Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission*, 168 Pa.Super. 360, 78 A.2d 46 (1951); *Bell Telephone Co. v. Pennsylvania Public Utility Commission*, 139 Pa.Super. 529, 12 A.2d 479 (1940); *Springfield Water Co. v. Philadelphia & Garretford Railway*, 45 Pa.Super. 516 (1911). These utilities obtained no property rights in the highway and could be ordered by a state or municipal agency to relocate their facilities at their own expense. *Delaware River Port Authority v. Pennsylvania Public Utility Commission, supra; Delaware River Joint Commission Case, supra; Bell Telephone Co. of*

*Pennsylvania v. Lewis,* 317 Pa. 387, 177 A. 36, *appeal dismissed sub nom. Bell Telephone Co. v. Van Dyke,* 296 U.S. 533, 56 S.Ct. 93, 80 L.Ed. 379 (1935). The reasoning justifying this conclusion was that utilities who occupy the highway free of cost should not be entitled to compensation if they are forced to relocate their facilities because of highway improvements. *Delaware River Port Authority v. Pennsylvania Public Utility Commission, supra.*

With the enactment of the Public Service Company Law in 1913,[3] the Commission was given exclusive jurisdiction over the construction of rail-highway crossings. Section 12 of that statute specifically included the common law rule relating to the apportionment of cost for relocation incurred by non-transportation public utilities.[4]

The express prohibition against the reimbursement of utilities for relocation costs was not included when the Public Utility Law of 1937[5] was enacted to supersede the Public Service Company Law. Nevertheless, this Court still rejected the argument that the common law rule was abrogated by implication as a result of that deletion. To the contrary, we held that the 1937 enactment did not establish "a clear, legislative intent to change the well-settled policy of the law that non-transportation public utilities must bear the expenses of relocating their facilities when the relocation is brought about by governmental exercise of the police power such as in construction, relocation, . . . of a highway-

3. Act of July 26, 1913, P.L. 1374 (repealed 1937).

4. Section 12 provided in pertinent part:
    [W]here the order of the Commission shall, as part of the regulation of the construction, relocation, alteration, or abolition of any crossing aforesaid, require, as incidental thereto, a relocation, changes in or the removal of any adjacent structures, equipment or other facilities of any telegraph, telephone, gas, electric light, water power, water pipeline, or other public service company, said company shall, at its own expense, relocate, change or remove, such structures, equipment or other facilities in conformity with the order of the commission;
    . . . .

5. Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. § 1101 *et seq.* (Purdon 1959; repealed 1978).

rail crossing." *Delaware River Port Authority v. Pennsylvania Public Utility Commission, supra,* 393 Pa. at 647, 145 A.2d at 176. In that opinion the Commission's right to allocate relocation costs under section 411(a) was limited to relocation costs incurred by the railroad, railway or the owners of the highway. Restated, we there concluded that the Commission's power did not extend to the expenses of a non-transportation utility.

Following our decision in *Delaware River Port Authority, supra,* the legislature in 1963 amended section 411(a) to read as follows:

> Section 411. Compensation for Damages Occasioned by Construction, Relocation, Protection, Alteration, or Abolition of Crossings.—(a) The compensation for damages which the owners of adjacent property taken, injured or destroyed may sustain in the construction, relocation, alteration, protection, or abolition of any crossing under the provisions of this act, shall, after due notice and hearing, be ascertained and determined by the commission. Such compensation, as well as the [expense] *cost* of [such] construction, relocation, alteration, protection, or abolition of [any] *such* crossing, *and of facilities at or adjacent to such crossing which are used in any kind of public utility service,* shall be borne and paid, as hereinafter provided, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties....

> [The words added or deleted by the amendment shown in italics or brackets, respectively.]

■ The 1963 amendment was obviously in response to our decision in *Delaware River Port Authority, supra,* and the added language provided the clear grant of authority to the Commission to allocate relocation costs incurred by *"any kind of public utility service"* in rail-highway crossings. *See City of Pittsburgh v. Pennsylvania Public Util-*

*ity Commission,* 45 Pa.Commw. 80, 404 A.2d 786 (1979). It is clear that after the 1963 amendment to section 411(a), the Commission's statutory power to allocate relocation cost to the appropriate parties in rail-highway crossing cases is limited only by the existence of *executed agreements* between the parties as to the allocation of such costs.

Section 411(a) provides for the compensation of utility owners for the expense necessitated by facility relocation, the amount of such compensation to be borne by the City and the utilities in proportions determined by the Commission *unless* the amounts to be paid are *mutually agreed upon and paid* by the parties. The parties affected by rail-highway construction are thus encouraged to agree among themselves respecting the allocation of relocation expenses. The Commission is unauthorized to allocate costs in the presence of an agreement and payment by the parties.

*Philadelphia v. Pennsylvania Public Utility Commission,* 449 Pa. 402, 408, 296 A.2d 804, 807 (1972) (emphasis in original).

As part of an ongoing codification program, the Public Utility Law of 1937 was repealed by the General Assembly in 1978 [6] and the Pennsylvania Consolidated Statutes [7] were simultaneously amended to include Title 66, Public Utilities.[8] As a result, a statutory provision virtually identical to section 411(a) now appears at 66 Pa.C.S. § 2704(a).[9] The

6. Act of July 1, 1978, P.L. 598, No. 116(b).

7. Act of November 25, 1970, P.L. 707, No. 230.

8. Act of July 1, 1978, P.L. 598, No. 116(a), 66 Pa.C.S. § 101 *et seq.*

9. Section 2704(a) provides:
Compensation for damages occasioned by construction, relocation or abolition of crossings
(a) General rule.—The compensation for damages which the owners of adjacent property taken, injured, or destroyed may sustain in the construction, relocation, alteration, protection, or abolition of any crossing under the provisions of this part, shall, after due notice and hearing, be ascertained and determined by the commission. Such compensation, as well as the cost of construction, relocation, alteration, protection, or abolition of such crossing, and of facilities

1978 codification did not effect a change in the Commission's power to allocate costs.

## III.

Under section 2704(a) the Commission was vested with the authority to allocate Bell's relocation cost between the City and Bell as it deemed appropriate unless the allocation of those costs was "mutually *agreed upon*" by Bell and the City and "paid" by Bell within the meaning of the section. However, the City and Commonwealth Court contend that our decision in *Philadelphia v. Pennsylvania Public Utility Commission (Philadelphia I)*, 449 Pa. 402, 296 A.2d 804 (1972) is controlling and requires the finding that the Commission was not authorized to allocate Bell's costs of relocation in this matter. We are forced to disagree with that conclusion.

The narrow holding by the majority in *Philadelphia I* was that in that factual setting there was a private cost allocation embodied in the utilities' permits which had been both mutually agreed upon and paid within the contemplation of section 411(a) prior to the Commission's attempt to order the City to reimburse 75 percent of the utilities cost of facilities relocation.[10] To the extent of the actual holding in *Philadelphia I* it simply tracks the language of section 411(a) and its successor section 2704(a) and leaves for us the determination as to whether under the instant facts there was an executed mutual agreement between Bell and the City prior to the Commission's assertion of jurisdiction.

at or adjacent to such crossing which are used in any kind of public utility service, shall be borne and paid, as provided in this section, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties.

**10.** In a dissenting opinion by Mr. Justice Pomeroy, joined by Mr. Justice Roberts, *Philadelphia v. Pennsylvania Public Utility Commission*, 449 Pa. 402, 412, 296 A.2d 804, 809 (1972), a view was expressed that payment had not been volitionally made pursuant to the agreement. In this case, the question of voluntary compliance is not before the Court because no payment had been tendered at the time of the Commission's decision.

Unfortunately the language in that opinion went beyond the holding and discussed the Commission's power to set aside contracts entered into between the parties as to the allocation of relocation costs.[11] That portion of the opinion was clearly gratuitous since the language of sections 411(a) and 2704(a) makes it apparent that the power vested under these provisions was limited to instances where there were no executed mutual agreements between the parties as to the allocation of relocation costs.

■■■ While the jurisdiction of the Commission over rail-highway crossings is not unlimited, it is, when it attaches, exclusive, *Delaware, Lackawanna & Western Railroad Co. v. Shuman*, 382 Pa. 452, 115 A.2d 161 (1955); *Bartron v. Northampton County*, 342 Pa. 163, 19 A.2d 263 (1941); *Pittsburgh Railways Co. v. Pennsylvania Public Utility Commission*, 198 Pa.Super. 415, 182 A.2d 80 (1962); *Department of Highways v. Pennsylvania Public Utility Commission, supra; Scott Township v. Pennsylvania Public Utility Commission*, 188 Pa.Super. 174, 146 A.2d 617 (1958); *Bridgewater Borough v. Pennsylvania Public Utility Commission*, 181 Pa.Super. 84, 123 A.2d 266 (1956); *Department of Highways v. Pennsylvania Public Utility Commission*, 141 Pa.Super. 376, 14 A.2d 611 (1940); *Somerset County v. Pennsylvania Public Utility Commission*, 132 Pa.Super. 585, 1 A.2d 806 (1938); *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission*, 66 Pa.Commw. 609, 445 A.2d 851 (1982); *Commonwealth, Department of Transportation v. Pennsylvania Public Utility Commission*, 64 Pa.Commw. 299, 440 A.2d 657 (1982); *Manchester Township v. Pennsylvania Public Utility Commission*, 43 Pa.Commw. 118, 401 A.2d 1237 (1979), and it does attach in rail-highway crossings as to the allocation of relocation costs *unless* the parties have executed a mutual agreement on the subject. The City's argument suggesting a continuing vitality of the common

11. This discussion was further misleading because it failed to clearly distinguish between an executed and a non-executed agreement. *Philadelphia v. Pennsylvania Public Utility Commission, supra,* 449 Pa. at 410–411, 296 A.2d at 808.

law rule relating to cost allocations of relocation expenses of non-transportation utilities is also fallacious. Under section 2704(a) it is clear that the allocation of these costs is to be made as the Commission determines. *Allegheny County Port Authority v. Pennsylvania Public Utilities Commission,* 207 Pa.Super. 299, 217 A.2d 810 (1966); *Commonwealth, Department of Transportation v. Pennsylvania Public Utility Commission,* 76 Pa.Commw. 525, 464 A.2d 645 (1983); *Redevelopment Authority of Scranton v. Pennsylvania Public Utility Commission,* 48 Pa.Commw. 238, 409 A.2d 508 (1980); *Commonwealth, Department of Transportation v. Pennsylvania Public Utility Commission,* 21 Pa.Commw. 407, 346 A.2d 371 (1975); *Erie Lackawanna Railway v. Pennsylvania Public Utility Commission,* 2 Pa.Commw. 396, 278 A.2d 188 (1971). Since the deletion of section 12 of the Public Service Company Law there is no basis for suggesting that the Commission's discretion is fettered by the former rule that the utilities must pay their own relocation costs.

■ Although one may argue the wisdom of the common law rule, it must be remembered that in enacting the Public Utility Code and in creating the Commission, the legislature sought to establish a statewide standardization of all facets of the operation of public utilities under the governance of the Commission. *Duquesne Light Co. v. Monroeville Borough,* 449 Pa. 573, 298 A.2d 252 (1972); *Chester County v. Philadelphia Electric Co.,* 420 Pa. 422, 218 A.2d 331 (1966); *Duquesne Light Co. v. Upper St. Clair Township,* 377 Pa. 323, 105 A.2d 287 (1954); *York Water Co. v. York,* 250 Pa. 115, 95 A. 396 (1915); *Hickey v. Philadelphia Electric Co.,* 122 Pa.Super. 213, 184 A. 553 (1936). It would be cavalier to assume that a judicially created rule of thumb would be preferable to a case-by-case judgment by the agency vested with the superintendence of the area.

■ In the instant case, the Commission determined that it had jurisdiction to allocate Bell's relocation costs, notwithstanding the permit agreements placed into evidence by the City, because *no payment* of any relocation costs had been

made.[12]   Given the explicit requirement of section 2704(a) that privately allocated relocation expenses must have been paid in order to divest the Commission of jurisdiction to make its own allocation, that determination was clearly correct.   Since it retained jurisdiction under section 2704(a), it was appropriate for the Commission to make a discretionary allocation of Bell's relocation costs.

■   Because the legislature, in its wisdom, has made the existence of an executed agreement the test for the Commission's jurisdiction, a mere agreement without payment is of no significance in allocation proceedings before the Commission.   Parties are thus encouraged to carry out their agreements promptly.   At the same time, the Commission is spared the onerous and inappropriate task of determining the validity of private agreements, and is permitted to allocate all uncompensated expenses in a fair and expeditious manner.

Accordingly, the Order of the Commonwealth Court reversing Paragraph 20 of the Commission's Order, which directed the City to reimburse Bell for 100 percent of its relocation costs, is reversed, and that portion of the Commission's Order is reinstated.   The appeal of PECO from the Order of the Commonwealth Court reversing Paragraph 21 of the Commission's Order is dismissed as moot.

HUTCHINSON, J., concurs in the result.

LARSEN, J., dissents and would affirm on the opinion of the Commonwealth Court.

HUTCHINSON, Justice, concurring.

I join the majority opinion but write separately to emphasize the Public Utility Commission's full power over agreements and contracts between utilities and municipalities where rail-highway crossings are involved.   The Commission has the general power to revise and reform the terms

12.  In view of our finding that there was no payment, we need not concern ourselves with the arguments advanced regarding whether or not the matter had been "mutually agreed upon."

of public utility contracts affecting the public interest under Section 508 of the Public Utility Code, 66 Pa.C.S. § 2704.[1] *See* the dissenting opinion by Justice Pomeroy, joined by then Justice (later Chief Justice) Roberts, in *Philadelphia v. Pennsylvania Public Utility Commission,* 449 Pa. 402, 296 A.2d 804 (1972). Moreover, Section 2704, 66 Pa.C.S. § 2704, restating former Section 411 of the 1937 Public Utility Code, Act of May 28, 1937, P.L. 1053, 66 P.S. § 1181, deals specifically with that power in cases of rail-highway crossings. The history of Section 2704 and its predecessor is instructive.

In *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 393 Pa. 639, 145 A.2d 172 (1958) our court held that the language in former Section 411 applied only to transportation utilities and not to non-transportation utilities affected by the relocation of a rail-highway crossing. In enacting Section 411, the legislature had attempted, in rail-highway crossing cases, to reverse the general common law rule that relocation costs are the utility's sole responsibility, by giving the P.U.C. authority to allocate rail-highway crossing relocation costs "unless such proportions are mutually agreed upon and paid by the interested parties". Thereafter in 1963, the legislature added language to Section 411 expressly giving the P.U.C. power to allocate the cost of relocating any kind of public

1. 66 Pa.C.S. § 508 currently provides:

    The commission shall have power and authority to vary, reform, or revise, upon a fair, reasonable, and equitable basis, any obligations, terms, or conditions of any contract heretofore or hereafter entered into between any public utility and any person, corporation, or municipal corporation, which embrace or concern a public right, benefit, privilege, duty, or franchise, or the grant thereof, or are otherwise affected or concerned with the public interest and the general well-being of this Commonwealth. Whenever the commission shall determine, after reasonable notice and hearing, upon its own motion or upon complaint, that any such obligations, terms, or conditions are unjust, unreasonable, inequitable, or otherwise contrary or adverse to the public interest and the general well-being of this Commonwealth, the commission shall determine and prescribe, by findings and order, the just, reasonable, and equitable obligations, terms, and conditions of such contract. Such contract, as modified by the order of the commission, shall become effective 30 days after service of such order upon the parties to such contract.

utility facility at or adjacent to a rail-highway crossing among the public utilities, municipal corporations or the Commonwealth in such proportions as the Commission may determine:

The compensation for damages which the owners of adjacent property taken, injured, or destroyed may sustain in the construction, relocation, alteration, protection, or abolition of any crossing under the provisions of this part, shall, after due notice and hearing, be ascertained and determined by the commission. Such compensation, as well as the *cost* of construction, relocation, alteration, protection, or abolition of *such* crossing, *and of facilities at or adjacent to such crossing which are used in any kind of public utility service,* shall be borne and paid, as provided in this section, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties.

Act of July 3, 1963, P.L. 212, 66 P.S. § 1181 (Emphasis indicates 1963 amendment).

Nevertheless, our Court in *Philadelphia v. Pennsylvania Public Utility Commission, supra,* held that the P.U.C. had no power to allocate costs when the agreement had been "executed" in the mere sense of being signed. It then construed such "execution" as payment. The subliminal justification for this somewhat strained exegesis was the potential for constitutional problems in interfering with the utilities' early 20th century street permit applications, which the majority construed to be preexisting "contracts". These applications were required by then existing city ordinances.

I believe the majority opinion overrules that case by implication. I would make the implication express.

Furthermore, I believe it follows from the majority opinion that the Commission is the sole forum for finally determining the appropriate cost allocation subject only to appel-

late review where, but only where, rail-highway crossings are involved. The authority of the Commission to supersede existing contracts is, therefore, limited in respect to the allocation of costs only when an agreement on that subject has been fulfilled by actual payment. Such is not the case here.