**MILLCREEK TOWNSHIP, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 2000.
Decided June 5, 2000.

Evan E. Adair, Erie, for petitioner.

David E. Screven, Harrisburg, for respondent.

Before KELLEY, J., FLAHERTY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

Millcreek Township (Township) appeals from an order of the Public Utility Commission (PUC) that denied the Township's exceptions to the recommended decision of the administrative law judge (ALJ). The Township presents three issues for our review. First, whether PUC committed an abuse of discretion by making factual determinations not supported by substantial evidence; second, whether PUC's action violates the State Highway Law (Highway Law) [1]; and third, whether PUC erroneously interpreted the agreements between the Pennsylvania Department of Transportation (DOT) and Consolidated Rail Corporation (Conrail) and Norfolk Southern Railway Company (Norfolk). For the reasons set forth herein, we affirm.

The relevant facts are as follows. On December 23, 1993, DOT filed an application with PUC requesting approval to replace an existing highway railroad crossing bridge on Peninsula Dr. (State Route 832) located in the Township, Erie County. Conrail and Norfolk own the railroad tracks over which the bridge crosses. No Township street intersects S.R. 832 in the immediate vicinity of the subject rail-highway crossing bridge. DOT's application requested that the existing two-lane bridge, including sidewalks on both sides, be removed and replaced with a four-lane bridge, also with sidewalks on both sides. PUC issued an order approving the application consistent with the plans submitted by DOT and providing for a post-construc-

---

1. Act of June 1, 1945, P.L. 1242, *as amended,* 36 P.S. §§ 670–101–670–1102.

tion evidentiary hearing at the request of any party to address cost allocation and any unresolved issues.

On October 26, 1996, DOT completed the crossing bridge reconstruction and adjoining road expansion at a total cost of $10,461,064, with Federal funds covering 80% of the construction cost. (R.R. at 41a). On August 13, 1997, without involvement of the Township, DOT entered into a Stipulation of Partial Settlement with Conrail and Norfolk whereby the railroads agreed to pay $157,722.00 and $95,728.50, respectively, toward the cost of construction in exchange for a release from all future bridge maintenance, rehabilitation or replacement responsibility. DOT then petitioned PUC to conduct an evidentiary hearing for the purpose of allocating project costs and future maintenance responsibilities.

■ At the November 22, 1996 evidentiary hearing conducted by PUC's ALJ, DOT requested that responsibility for maintenance of the protective fencing surrounding the sidewalk be assigned to the Township. DOT also requested that the Township be assigned responsibility for snow and ice removal from the sidewalk.

DOT accepted responsibility for all other bridge reconstruction and maintenance costs, including snow and ice removal from the roadway. Despite the Township's objection, the ALJ's recommended decision assigned responsibility for snow, ice and debris removal from the bridge sidewalks to the Township, including any future sidewalks that DOT may construct along S.R. 832's approach to the bridge. The ALJ further recommended that all other costs and maintenance responsibility be assigned to DOT, including maintenance of the protective fencing surrounding the sidewalks on the bridge. The ALJ's recommended decision also incorporated the Stipulation of Partial Settlement agreed to by DOT, Conrail and Norfolk. The Township filed exceptions to the ALJ's recommended decision and DOT filed reply exceptions, which Conrail and Norfolk joined after the ALJ granted their petitions, *nunc pro tunc,* to file reply exceptions.[2] PUC issued a final order dated June 10, 1999, in which it denied each of the Township's exceptions and adopted the ALJ's recommended decision. The instant appeal ensued.[3]

■ Initially, we note that § 2704(a) of the Public Utility Code (Code)[4] vests

2. Conrail and Norfolk initially missed the limitation period for filing exceptions because the Township did not provide them notice of its appeal. The Township explained that it did not notify Conrail and Norfolk because the ALJ accepted the Stipulation of Partial Settlement, which effectively released these parties from the litigation. Following the ALJ's grant of the petitions, *nunc pro tunc,* Conrail and Norfolk each filed reply exceptions adopting DOT's reply exceptions and reasserting that the stipulated settlement absolved them of all future responsibility with regard to maintenance of the bridge. (PUC Opinion and Order, June 10, 1999, Reproduced Record (R.R.) at 135a–137a).

   PUC regulation § 1.15 provides that upon motion of a party after the expiration of the specified filing period, PUC may permit submission of the late document where reasonable grounds are shown for the failure to act. 52 Pa.Code § 1.15(a)(1).

3. The Commonwealth Court's standard of review in an appeal from a state agency adjudication is limited to a determination of

whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *National Fuel Gas Distribution Corporation v. Pennsylvania Public Utility Commission,* 677 A.2d 861 (Pa. Cmwlth.1996).

4. Section 2704(a) of the Code provides in pertinent part:

   [T]he cost of construction, relocation, alteration, protection, or abolition of such crossing, and of facilities at or adjacent to such crossing which are used in any kind of public utility service, shall be borne and paid, as provided in this section, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as [PUC] may, af-

PUC with exclusive jurisdiction to allocate costs and maintenance responsibility of rail-highway crossings to any public utility or municipal corporation concerned, or to the Commonwealth. 66 Pa.C.S. § 2704(a). In executing this statutory duty, PUC is not limited to a fixed rate or formula but may consider all relevant factors in apportioning such costs provided that the decision has a sound legal and factual basis and the result is just and reasonable. *AT & T v. Pennsylvania Public Utility Commission*, 558 Pa. 290, 306, 737 A.2d 201, 209 (1999) citing *City of Philadelphia v. Philadelphia Electric Co.*, 504 Pa. 312, 324, 473 A.2d 997, 1003 (1984). Further, PUC must make specific findings of fact delineating the factors considered in reaching its determination. *Greene Township Board of Supervisors v. Pennsylvania Public Utility Commission*, 668 A.2d 615 (Pa.Cmwlth.1995).

■ On appeal, the Township first argues that PUC abused its discretion by allocating to the Township responsibility for snow, ice and debris removal from sidewalks of the reconstructed rail-highway crossing and any future sidewalks that DOT may construct on the approaching roadway. The Township contends that the record does not contain substantial evidence supporting this determination. We disagree and conclude that the record contains sufficient support for PUC's conclusion that Township residents will primarily benefit from the sidewalks on the bridge, and therefore, allocation of sidewalk maintenance responsibility to the Township is just and reasonable.

In presenting its abuse of discretion argument, the Township maintains that PUC failed to base its decision on an analysis of the five factors set forth in *AT & T v. Pennsylvania Public Utility Commission*, 709 A.2d 980 (Pa.Cmwlth.1998), *reversed by*, 558 Pa. 290, 306, 737 A.2d 201, 209 (1999). The Township asserts that when

ter due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties.

apportioning costs under § 2704(a) of the Code, PUC must consider and analyze the following factors:

- The party that originally built the crossing;
- The party that owned and maintained the crossing;
- The relative benefit initially conferred on each party through construction of the crossing;
- Whether either party is responsible for the deterioration of the crossing; and
- The benefit received by each party as a result of the reconstructed crossing.

The Township argues that under these factors it should prevail since: 1) DOT constructed and maintained the original bridge and sidewalks; 2) travelers on S.R. 832—not the Township—received the benefit of the original and reconstructed crossings; and 3) the record is void of evidence concerning the deterioration of the crossing. We reject this argument for two reasons. First, in reversing this Court's order in *AT & T*, 709 A.2d 980, the Pennsylvania Supreme Court clearly stated that PUC is not required to set forth an analysis of these five factors. *AT & T*, 558 Pa. at 306, 737 A.2d at 209. Specifically, the Supreme Court stated that "to the extent that the Commonwealth Court's opinion may be read to establish a mandatory, exclusive list of considerations, we expressly reject such a limitation." *Id.* The Supreme Court further stated that "a practice which would hold PUC to a more rigorous standard in expressing its reasons for a cost allocation determination would unnecessarily infringe upon the discretionary aspect of [its] decision . . . ." *Id.* at 312, 737 A.2d at 213.

■ Second, even though it was not required to present a formal analysis, PUC

66 Pa.C.S. § 2704(a).

clearly considered all relevant factors when allocating the costs and maintenance responsibilities for the reconstructed rail-highway crossing. The record reflects that Federal funds covered 80% of the cost of the project with DOT responsible for the remaining 20% of the cost. (R.R. at 41a). DOT sought contributions from the railroads since the presence of their tracks necessitated construction of the crossing at issue. Conrail and Norfolk collectively agreed to contribute $253,450.50 toward the reconstruction cost in exchange for a release from all future maintenance responsibilities. (R.R. at 42a). PUC then weighed the ownership interests, maintenance history and the benefits flowing to the respective parties and adopted the cost allocation structure presented by DOT. (ALJ Recommended Decision, December 23, 1998 at 13–19, R.R. at 78a–84a). Following the same considered approach, PUC then assigned all maintenance responsibility for the crossing to DOT with the exception of sidewalk snow, ice and debris removal, which was assigned to the Township since the evidence showed that its residents generate the majority of pedestrian traffic on the bridge. (Notes of Testimony at 14, 16, 25, R.R. at 41a, 43a, 52a; ALJ Recommended Decision at 16, R.R. at 81a). This result is consistent with this Court's holding in *Tredyffrin Township v. Pennsylvania Public Utility Commission,* 115 Pa.Cmwlth. 131, 539 A.2d 925, 927 (1988), where we concluded that evidence of local pedestrian use of sidewalks located on a rail-highway crossing is sufficient to support PUC's allocation of responsibility for snow, ice and debris removal from those sidewalks to the local municipality. Accordingly, we conclude that on the evidence of record, PUC could have reasonably determined to allocate responsibility for sidewalk snow, ice and debris removal to the Township. We further conclude that PUC's allocation of costs and responsibilities is just and reasonable because both the ownership and use of the crossing are valid considerations when making this determination. *SEPTA v.*

*Pennsylvania Public Utility Commission,* 140 Pa.Cmwlth. 270, 592 A.2d 797, 804 (1991) (in vesting authority in PUC to allocate project costs and responsibilities between the concerned entities, the General Assembly created a more rational and efficient system by codifying the common law principle that cost and maintenance responsibility lies with those who *own* and *use* the crossing).

■ The Township next argues that PUC's order violates the Highway Law. The Township cites various provisions of the Highway Law in support of its contention that the General Assembly imposed on DOT the exclusive duty to maintain Commonwealth owned highways, including sidewalks. 36 P.S. §§ 670–407, 670–410, and 670–412. While this is an accurate statement, the Township ignores the fact that the General Assembly divested DOT of jurisdiction over that portion of a Commonwealth highway that crosses a railroad. 66 Pa.C.S. §§ 2702–2704. The General Assembly granted exclusive jurisdiction over rail-highway crossings to PUC, which applies to the acquisition of property and authority to assign construction responsibility and cost allocation to any concerned public utility, municipality or the Commonwealth. *Id.* Moreover, § 701 of the Highway Law expressly recognizes the jurisdiction of PUC over rail-highway crossings located on Commonwealth owned highways as follows:

> All such bridges shall be taken over by [DOT] and shall be built, rebuilt, repaired, maintained, and may be lighted by [DOT] at the expense of the Commonwealth. The assumption and taking over of any such bridge by the Commonwealth shall not be construed to relieve any person, firm association, or corporation from any obligation for the construction or maintenance of such bridge under any agreement or order of court or under any order of the [PUC] heretofore or hereafter made.

36 P.S. § 670–701. Accordingly, the Township's argument pertaining to the Highway Law is without merit.

█ Turning to its third and final argument, the Township asserts that the contributions made by Conrail and Norfolk as a result of the Stipulation of Partial Settlement constitute payments to DOT for the purpose of DOT actually performing all future crossing maintenance, including snow, ice and debris removal. The Township contends that given this agreement, PUC erred by assigning the Township the cost and responsibility to perform sidewalk maintenance that DOT had agreed to perform in exchange for compensation from the railroads. The Township further argues that PUC also erred by allowing Conrail and Norfolk to submit reply exceptions *nunc pro tunc*. PUC responds that the Township mischaracterizes the nature of the settlement agreement. Rather than payments to DOT to perform all future maintenance, PUC contends that the Stipulation of Partial Settlement required contributions by Conrail and Norfolk toward DOT's reconstruction cost in exchange for a release from future crossing maintenance responsibility.

The relevant paragraphs of the Stipulation of Partial Settlement are as follows:

3. [DOT] agrees to bear the cost of the project but for contributions from the railroads in accordance with agreements between [DOT] and Conrail ... and [Norfolk]. . . .

4. [DOT] has agreed to maintain the entire structure, including the structural integrity of the sidewalk but not the protective fencing and snow and ice removal from the sidewalk. The only outstanding issue is the maintenance of the protective fence for the sidewalk and the removal of snow and ice from the sidewalk.

5. Conrail and [Norfolk] have agreed to reimburse [DOT] $157,722.00 (current estimate) and $95,728.50 respectively to be relieved of all future maintenance of the highway structure including the protective fence for the sidewalk and the removal of snow and ice from the sidewalks on the bridge.

Stipulation of Partial Settlement, R.R. at 92a.

When read collectively, these paragraphs support PUC's conclusion that Conrail and Norfolk agreed to defray DOT's portion of the crossing reconstruction cost in exchange for a release from future maintenance responsibility. Additionally, paragraph four clearly states that DOT did not accept responsibility for snow and ice removal from the sidewalks on the bridge. We further agree with PUC's conclusion that the Township offered no credible evidence to support its interpretation of the Stipulation of Partial Settlement. (R.R. at 80a).

Lastly, we reject the Township's assertion that PUC abused its discretion by granting the petitions, *nunc pro tunc*, presented by Conrail and Norfolk to file reply exceptions. Even though PUC had accepted the Stipulation of Partial Settlement, Conrail and Norfolk maintained a cognizable interest in the instant matter since this litigation partially focused on the subject matter of the settlement agreement, and thus, exposed the agreement to further scrutiny. Additionally, the record plainly shows that the only reason Conrail and Norfolk did not file timely reply exceptions is the Township did not provide them notice of its appeal on the mistaken belief that they no longer were interested parties. (PUC Opinion and Order at 4–5, R.R. at 136a–137a). As a result, PUC did not commit an abuse of discretion by granting Conrail and Norfolk permission to file reply exceptions, *nunc pro tunc*.

Accordingly, as we have resolved all appeal arguments in favor of respondent, we affirm PUC's order dated June 10, 1999.

## *ORDER*

AND NOW, this 5th day of June, 2000, the order of the Public Utilities Commis-

sion dated June 10, 1999, is hereby affirmed.

Judge KELLEY concurs in the result only.

